## Criswell's Appeal.

*"Heirs" in Devise of Remainder, presumed to be a Word of Limitation.— Presumption, how destroyed.—Creation of Estate in Fee by Will.*

A testator gave "to his son J., during his natural life and that of his present wife, the tract of land whereon he now lives," &c., and directed "that after the decease of my said son and his present wife, that the said tract of land descend to their heirs jointly, and *their heirs* and assigns for ever, or to such of them as may be *then living.*" After the death of J. and wife, in partition of the land between the children and grandchildren (some of the children having died before their parents, leaving issue), the court, on petition of one of the children living at the death of J. and wife, ordered partition among that class, which excluded the grandchildren, on the ground that the testator, by his use of the word "heirs" then living, meant "children." On appeal it was *held:*

1. That under the devise to J. and wife for life with remainder in fee to their heirs, they took a freehold of inheritance.

2. That when a testator uses the word "heirs" in a devise of a remainder, the presumption is, that he uses it in its ordinary legal sense, as a word of limitation and not of purchase.

3. That this presumption cannot be overcome, unless it is so plain as to preclude misunderstanding, that the testator intended to deviate from the general rule.

4. That the addition by the testator of the words "then living" to the word "heirs," was insufficient to cause the latter to give way; for superfluous or inconsistent words or doctrines in a will, will not suffice to reduce the words "heirs" or "heirs of the body" to words of purchase.

5. That J. and wife having a joint estate in fee simple, at their death it descended to their heirs under the intestate laws, and therefore included their grandchildren, whose parents died before them, and that the decree of the Orphans' Court, excluding the grandchildren, was error.

CERTIORARI to the Orphans' Court of *Lawrence county.*

This was an appeal by Francis Criswell, in right of his wife Elizabeth, from the decree of the Orphans' Court in the matter of the partition of the real estate of John Cheniworth, of Berkley county, Virginia, situate within the bounds of Mercer county, as they existed in 1814, the date of the will.

The case was this:—John Cheniworth resided in Virginia, and was possessed of considerable real and personal estate. He made his will in 1814, which was admitted to probate in 1820, by which he devised all his estate to his son and daughters.

To his son Joshua and his then wife he devised the tract of land in controversy, "during the life of Joshua and his wife, and then to their heirs, jointly, and their heirs and assigns for ever, or to such of them as may be then living."

At the death of his father, Joshua had seven children living, and there were subsequently three more born to him. At the death of Joshua and his wife, six of said children and four grandchildren survived them, of which grandchildren, the appellant, Elizabeth Criswell, a daughter of Richard Cheniworth, deceased, is one.

[Criswell's Appeal.]

The proceeding was commenced in the Orphans' Court on the petition of Henry Calderwood and wife, "in right of said wife, for partition of said land among the children and grandchildren of the said Joshua entitled thereto." To which petition an answer was filed by George Sherbine in the right of his wife, denying the title of the said grandchildren to the land, and their right to participate in said proceedings.

The following is an extract from the will, so far as it relates to the land in controversy :—

"I, John Chinewith, of the county of Berkeley, and commonwealth of Virginia, being now in perfect health and sound mind, and taking into consideration the uncertainty of life, have thought proper thus to make my will, and dispose of all the real and personal estate of which I am now or may hereafter be seised. And be it known, that I do hereby make my last will and testament in manner and form following, that is to say :—

"1st. I devise that all my just debts and funeral expenses be paid as soon as possible after my decease, and real and personal estate divided in the following manner, viz. : I give to my son Joshua Chinewith, during his natural life and that of his present wife, all the tract of land whereon he now lives, in the county of Mercer, and commonwealth of Pennsylvania, lying and being in the fork of the Shenango and Mahoning rivers. It being the same tract of land which I purchased of William Mackey, deceased, formerly of the town of Martinsburg, in this county ; and it is further my will and desire that after the decease of my said son Joshua and his present wife, that the said tract of land descend to their heirs jointly, and their heirs and assigns for ever, or to such of them as may be then living. The said tract of land contains 217 acres and 24 poles, be the same more or less."

Upon this petition and answer the court decreed that the names of the grandchildren be stricken from the record, and that partition be made only to and among the children living at the death of Joshua and his wife. From which decree Francis Criswell, in right of his wife, appealed, and assigned here, as cause for reversing the decree of the Orphans' Court, that the court erred in directing the name of Elizabeth Criswell to be stricken from the proceeding in partition ; and deciding that the grandchildren of Joshua Chinewith, deceased, were not entitled to any part or portion of the land described in the petition under the will of John Chinewith, deceased, or in any other way.

The case was argued by *L. L. McGuffin* for appellant, and by *McComb* for appellee.

The opinion of the court was delivered, January 6th 1862, by

5 Wr.—19

[Criswell's Appeal.]

STRONG, J.—That an estate given to a man and his wife for life, with a remainder in fee to their heirs, amounts to a freehold of inheritance in the first takers, was held in Auman *v.* Auman, 9 Harris 343. A similar ruling in this case would give to Joshua Chinewith and his wife a fee simple in the lands devised to them by his father, unless it is so plain as to preclude misunderstanding, that the testator used the word "heirs" in the devise of the remainder, as a word of purchase. The presumption is that he used it in its ordinary legal sense, *i. e.* as a word of limitation; and all the cases prove that this presumption is not to be overcome by other words in the will merely incongruous with such an intention. A testator may doubtless use the word heirs as synonymous with "children;" but his intent thus to use it must be gathered from something more than implication. It must be expressed. In Perrin *v.* Blake, Mr. Justice Blackstone only gave utterance to what has often been said by others, when he remarked, that "it is incumbent upon one who asserts that the words 'heirs,' or 'heirs of the body,' in a will, are used as words of purchase, to show, by plain and manifest indications, that the testator intended to deviate from the general rule; for that is never supposed till made out, not by conjecture, but by strong and conclusive evidence." In the will now under consideration, not only did the testator devise the remainder by technical words, plainly significant of heritable succession, but he employed other words which indicate a purpose that the remainder-men should take *as heirs* of the tenants to whom a life estate was first given. He declared that after the death of Joshua and his wife, the land should "*descend*" to their heirs. This may not be conclusive, but it is of some weight when we are endeavouring to ascertain whether the testator designed the remainder-men to take through the tenants for life, or directly from himself.

The court below inferred that the testator meant "children," by the word "heirs," from his use of the alternative phrase, "or to such of them as may be then living." The whole clause, in regard to which the question arises, is as follows: "I give to my son, Joshua Chinewith, during his natural life, and that of his present wife, all the tract of land whereon he now lives, &c., and it is further my will and desire that after the decease of my said son and his present wife, that the said tract of land descend to their heirs jointly, and their heirs and assigns for ever, or.to such of them as may be then living." It is said there could be no other heirs than such as were living at the death of the ancestors; that the words "then living" would be superfluous, unless the testator intended children by "heirs," and that in order to give meaning to those words, the technical words of limitation must give way, and be treated as only description of persons. We are not convinced by this argument. Let it be admitted that

[Criswell's Appeal.]

the words "then living" are strictly of no legal meaning, when applied to heirs, this is no sufficient reason for holding that the testator, in the use of technical words of limitation, intended to depart from their ordinary legal meaning. It is not so easy to overcome the contrary presumption. The words "heirs," and "heirs of the body," will retain their significance, though the effect be to make unmeaning other words in the will not technical, and even though there may be inconsistent expressions. If the words are repugnant, why should the word "heirs" give way, rather than the words "then living?" In the will of an unlettered man, however, they can hardly be called repugnant. Lawyers may understand that there are no heirs of a living person, or that the phrase "living heirs" is a superfluous addition to a gift to heirs, but laymen may not. The books are full of cases in which it has been held that superfluous, and even inconsistent doctrines in a will, do not suffice to reduce the words "heirs," or "heirs of the body," into words of purchase. Thus, words of superadded limitation alone are insufficient, as in case of a gift to A. for life, remainder to the heirs of his body, *and to their heirs for ever.* So, when there are added words of distributive modification, as in a gift to A. for life, remainder to the heirs of his body, *as tenants in common, share and share alike.* These words of additional limitation or of distribution cannot take effect, if the word "heirs" retains its legal meaning; and yet they are uniformly ruled to be insufficient to change it into a word descriptive of persons. See Smith on Executory Interests, pages 472 *et seq.,* and cases collected.

Upon the whole, we are of opinion that the will of the testator does not contain unequivocal evidence that in the use of the word "heirs" he meant "children." It follows, that Joshua Chinewith and his wife took a joint estate in fee simple, which, upon the death of the survivor, descended under the intestate laws.

The order of the Orphans' Court is reversed, and the record is remitted with a *procedendo.*