## Porter's Appeal. Eberle's Estate.

1. Parol evidence to show what was the actual testamentary intentions of a testator, such as his declarations of what he had done or meant to do, is inadmissible, but it is competent to determine which of several persons or things was intended under an equivocal description.

2. Where a will is artistically drawn, and evinces an accurate use of technical terms, the presumption that the testator used them in their legal sense, will not be so easily overcome as if the will bears on its face evidence that it was drawn by an illiterate man.

3. No rule of interpretation requires or permits the well-settled meaning of an apt word in a will to be set aside by a direction which admits of a construction consistent with that meaning.

4. In a will which was artistically drawn the testator provided: " The note of $4000, dated August 6th 1861, bearing interest at the rate of five per cent. per annum, which I hold against my daughter Mary; and the one of $3000, bearing date the same day at the same rate of interest, which I hold against my son Benjamin, are deemed by me as advancements to the respective drawers thereof; and I order and direct that they be valued and appraised at their full amounts as assets of my estate in the hands of my executors, and to be respectively paid and accounted for by the respective drawers thereof at the first distribution of the residue of my estate, out of their respective shares therein." *Held*, that the term advancement was used in its technical sense by the testator, and it was not affected by the direction of the will, and it was error therefore to charge interest on the note of the daughter in the distribution of the testator's estate.

May 6th 1880. Before Mercur, Gordon, Paxson, Trunkey and Sterrett, JJ. Sharswood, C. J., and Green, J., absent.

Appeal from the Orphans' Court of *Lancaster county:* Of May Term 1880, No. 179.

Appeal of Mary C. Porter, from the decree of the court, dismissing the exceptions to, and confirming the report of the auditor, in the distribution of the estate of Henry Eberle, deceased. Henry Eberle died in February 1876, leaving five children, and a will dated October 15th 1875, which contained the following clause: " The note of $4000 dated August 6th 1861, bearing interest at the rate of five per cent. per annum, which I hold against my daughter Mary ; and the one of $3000, bearing date the same day, at same rate of interest, which I hold against my son Benjamin F. Eberle, are deemed by me as advancements to the respective drawers thereof, and I order and direct that they be valued and appraised at their full amounts as assets of my estate in the hands of my executors, and to be respectively paid and accounted

[Porter's Appeal.]

for, by the respective drawers thereof, at the first distribution of the residue of my estate out of their respective shares therein."

The note of his daughter Mary, who was intermarried with George W. Porter, was as follows:

" One year after date I promise to pay to Henry Eberle, Sr., or order, Four Thousand Dollars, without defalcation, for value received, with interest at five per cent. per annum until paid. Witness my hand and seal this sixth day of August, One Thousand Eight Hundred and Sixty-one.

" Witness:

"A. M. HERSHEY.                    MARY C. PORTER. [SEAL.]"

By the terms of his will, the executors of the testator, John H. Zeller, and testator's son Benjamin F. Eberle, were directed to sell his real and personal property, and the proceeds of his residuary estate were to be divided in equal shares among his five children. When they filed their inventory the executors included therein the two notes of Mary C. Porter and Benjamin F. Eberle, with interest charged thereon to date of filing said inventory. Benjamin F. Eberle accounted for the amount of his note $3000, with the interest $2347.91, and the executors charged themselves with $5347.91. Mrs. Porter claimed that while the principal of her note was to be deducted from her share, under her father's will, she was not to be charged with interest thereon; that by the terms of said will, said principal was converted into an advancement, and that it did not carry interest.

The executors' account was referred to an auditor, A. Slaymaker, Esq., before whom it appeared that when Mary C. Porter gave her note to her father, she was a married woman; that she gave said note to her father at his request to secure certain endorsements made by him to her husband, George W. Porter, who died in 1863. The testator subsequently learned that the note was void because of Mrs. Porter's coverture. Parol evidence was offered of declarations made by the testator in his lifetime, to the effect that Porter had gotten the money, and that it went through his hands, and that Mary had no benefit therefrom, and that he thought therefore it was not right to charge her with interest on the money; that he had a notion to try to fix it, and give her a receipt for the interest; that he had come to the conclusion, that to give satisfaction, he must charge Mary with the $4000, but no interest thereon. This evidence was taken, but was afterwards excluded by the auditor as inadmissible.

The auditor, inter alia, reported:

" The testator's plan for the distribution of his property was manifestly to convert it all—personalty as well as realty—into money, and the fund so produced to distribute equally among his children (except Simon, as to whom it was uncertain whether he

was yet living), in the shares of two of them, Mrs. Porter and Benjamin F. Eberle, to be reckoned, however, certain claims which he held against them respectively on notes under seal, both of date August 6th 1861, and alike bearing interest at the rate of five per cent. per annum, of which that of Mrs. Porter was for $4000 and that of B. F. Eberle was for $3000.

" The note of the former, having been executed during the lifetime of her husband, was void, and being therefore entirely valueless as an asset of the estate, there was no mode in which the payment of the debt for which it was given could be secured, but by providing in the will for its deduction from her share of his estate. The testator has provided for such a deduction, but has he done so in such terms as to make it inclusive of interest upon the principal?

" The provision on that subject constitutes the fourth item of the will which has already been recited, and need not now be repeated. After describing the notes, it states that 'they are deemed by me (the testator) as advancements to the respective drawers thereof,' and if this were all that was said upon the subject, there could unquestionably be no charge of interest upon them. The item, however, does not so end, but proceeds further to provide 'that they (the notes) shall be valued and appraised at their full amounts, as assets of my estate in the hands of my executors, and to be respectively paid and accounted for by the respective drawers thereof at the first distribution of the residue of my estate out of their respective shares therein.'

" Now, an advancement being an irrevocable gift of the money or property which is its subject, that money or property ceases definitively thereafter to belong to the donor, and of course upon his death is neither to be included in the inventory of his estate, nor appraised as a portion of its assets. It is evident, therefore, that the testator has here used the term without any distinct perception of its technical meaning; and that his intention in the provision is to be determined, not from its use alone, but from the general scope and effect of the phraseology employed to express that intention.

" Whatever the testator chose to call these notes, he had unquestionably a right so to dispose of his estate, that the presumptive shares therein of the respective drawers of the notes should be diminished by the amounts for which they were severally given. That he so intended as to the principal is certain; and, observing the particularity with which, in the final clause of the item under consideration, he has directed the notes to 'be valued and appraised at their full amounts as assets of his estate, in the hands of his executors, and (so appraised) to be respectively paid and accounted for by the respective drawers thereof,' it has seemed to the auditor impossible to escape the conclusion that the diminution of the

shares of the drawers of the notes was intended to include interest as well as principal.

" In this distribution, therefore, the share of Mrs. Mary Porter will be merely her fifth part of the residue of this estate, after deducting therefrom the principal of her note of August 6th 1861, with interest therefrom from that date to the time of the filing of this report." * * *

Exceptions filed to this report were dismissed, and the report confirmed, the court, Livingston, P. J., saying:

" We have examined the authorities cited, the will of the decedent, the able report of the learned auditor and minutes of audit, and have felt obliged (though reluctlantly) to arrive at the same conclusions presented to the court by the auditor."

Patterson, A. L. J., dissented, holding that the $4000 to the daughter, Mrs. Porter, was an advancement, and did not carry interest.

From the above decree this appeal was taken.

*S. H. Reynolds* and *H. C. Brubaker*, for appellant.—Technical words and expressions must be taken in their technical sense, unless a clear intention can be collected to use them in another sense, and that other can be ascertained: Hawkins on Wills, Prop. 3, sect. 4.

All the cases prove that the presumption of law with reference to the use of technical words and expressions in a will is that they are to be taken in their ordinary legal sense, and are not to be overcome by other words in the will merely incongruous with such an intention: Doebler's Appeal, 14 P. F. Smith 15; Green *v.* Howell, 6 W. & S. 203; Hall *v.* Davis, 3 Pick. 450.

It matters not for what purpose the note was originally taken, whether testator intended at the time to hold it as evidence of a debt for moneys loaned which he expected at some future time to recover back, or intended it as an advancement, for by the terms of his will he gave it a distinctive character; he declared the note for $4000 to be an advancement, and thereby attached to it all the usual incidents, one of which was that it should not bear interest, but be valued as of the time of the gift.

*N. Ellmaker, D. G. Eshleman* and *H. M. North*, for appellees.—Whether the transfer by the father to the child is an advancement or a loan, is a question of intention at the time the transaction is completed, and it cannot be changed afterwards by either of the parties without the consent of the other: Miller's Appeal, 4 Wright 57; Oller *v.* Bonebrake, 15 P. F. Smith 338. In this case the father took a note, payable in one year after date, with interest at the rate of five per cent. That is presumed to be a debt and not an advancement: Roland *v.* Schrack, 5 Casey 125;

[Porter's Appeal.]

High's Appeal, 9 Harris 283. Did the testator intend by his will to change this debt into an advancement? Technical words are taken to be used in their proper technical sense, but they are not permitted to overturn the intent of the testator, when that intent clearly appears to be different: Doebler's Appeal, *supra;* Yarnall's Appeal, 20 P. F. Smith 335, 340. And the intention of the testator, of each will separately, is to be gathered from its own four corners : Provenchere's Appeal, 17 P. F. Smith 463; Gilbert's Appeal, 4 Norris 347, 350. The legal construction of a will cannot be affected by the parol declarations of the testator : Comfort *v.* Mather, 2 W. & S. 450; Woodman *v.* Good, 6 Id. 169

Mr. Justice TRUNKEY delivered the opinion of the court, May 17th 1880.

The intention of the testator is the prevailing consideration in applying all rules of construction. It is the intention of the testator expressed in the will that is to govern; and this is to be judged of exclusively by the words of the instrument, as applied to the subject-matter and surrounding circumstances. Parol evidence to show what were the actual testamentary intentions, such as his declarations of what he had done or meant to do, is inadmissible ; but it is competent to determine which of several persons or things was intended under an equivocal description. In construing the autograph will of an illiterate man, the meaning of technical language may be disregarded, but no word which has a clear and definite object may be struck out. Technical words and phrases, although prima facie to be taken in their true sense, will not be construed so as to defeat any obvious general intention of the testator, since wills are often prepared by persons wholly unacquainted with the precise technical force of legal words and formulas. In seeking for the expressed intention of the testator, his words are to receive that construction and interpretation, which a long series of decisions has attached to them, unless it is very certain they were used in a different sense. These oft-repeated rules are recalled by the question now presented.

This will is artistic and evinces an accurate use of technical terms. Hence, the presumption that the testator employed them in their legal sense, will not be so easily overcome as if the will bore on its face evidence that it was drawn by an ignorant man. Here is no exhibition of such illiteracy as calls for a departure from the actual meaning of its words to a real or supposed popular sense, but rather such skill as induces belief that its words, which have been judicially defined, were understandingly employed.

An advancement is an irrevocable gift by a parent in his lifetime, to a child, on account of such child's share in the parent's estate. It is valued as of the time of the gift. Therefore, interest is not chargeable thereon, unless there be clear expression that it

[Porter's Appeal.]

shall carry interest, as was the case in Fickes *v.* Wireman, 2 Watts 314. Statutory provisions respecting advancements are applicable only to the children of intestates.

When the parent, giving money to a child, takes a note for its repayment, it is a debt. If such note be void because the maker was a married woman, the money is not an advancement. But a parent has power by his will to turn a debt into an advancement, and when he does so, he gives it all the usual incidents, one of which is that it shall be valued as of the date the child received the money. It will not continue a debt as regards interest, and a gift as regards principal, unless he plainly says so: Green *v.* Howell, 6 W. & S. 203; Hutchinson's Appeal, 11 Wright 84.

In this case the testator declared that he deemed the note he held against his daughter, Mary, as an advancement, and directed that it be valued and appraised at its full amount, as assets of his estate in the hands of his executors, and to be paid and accounted for by her at the first distribution of the residue of his estate, out of her share therein. In unmistakable phrase, he turned the debt into a gift to be valued at the date of the note. The word advancement occurs nowhere else in the will, nor is there anything to show it was not used in its legal sense. The advancement is directed to be valued and appraised at its full amount, as assets for distribution, and to be deducted from her share. Of what date shall it be valued? Giving every word its proper meaning, at the date of the gift. Its full amount is the face of the note without interest. To "be valued and appraised" has no significance as showing inclusion or exclusion of interest; for even if the note were a debt, mere appraisement means its amount either with or without interest, according to the contract. A debt on interest by contract or overdue, converted into an advancement and directed to be appraised as part of the assets, is taken without interest unless otherwise expressed. No case has been found to the contrary.

We are of opinion that the testator's intention expressed in his will is not doubtful; but if it be, no rule of interpretation requires or permits the well-settled meaning of an apt word to be set aside by a direction, which admits of a construction consistent with that meaning. It was error to charge Mrs. Porter any interest on the principal sum of $4000, which was made an advancement to her.

Decree reversed, and it is ordered that the record be remitted to the Orphans' Court for further proceeding. Costs of this appeal to be paid by the executors out of the moneys of the estate.