ESTATE OF F. A. COMLY, DECEASED.

APPEAL BY C. A. COMLY ET AL. FROM THE ORPHANS' COURT OF MONTGOMERY COUNTY.

Argued February 5, 1890—Decided October 6, 1890.

(a) A testator bequeathed personalty, in trust, to pay the income thereof in equal shares to four persons, "so long as any of said legatees may live, it being my wish and direction that the trust estate shall be kept together as a whole until the death of all the said legatees." Upon the death of any one of them, it was provided:

(b) "Then the part payable to such deceased legatee shall be payable to their heirs, assigns, or legal representatives, as the case may be;" and upon the death of all four, the principal to be divided into four equal parts, "and one fourth to be paid over to the heirs, assigns, or legal representatives, of each of the four legatees:"

1. The word "heirs," when used in a limitation of personal property to the heirs of the first taker, either substitutionally or by way of succession, is generally understood to mean those entitled under the statutes

### Statement of Facts.

of distribution in case of intestacy, and in this instance, indicated the legatee's next of kin under the intestate laws.*

2. The words "assigns or legal representatives," following the word "heirs," were referable to the latter word "heirs," in the will, so that the income payable to the deceased legatee for and during his life only, should from and after his decease be paid to his heirs and *their* assigns or legal representatives.

3. By said will, an active, valid and continuing trust was created for the management of the fund bequeathed, the payment of the income thereof to the four primary beneficiaries during their respective lives, and the preservation of the corpus for distribution on the death of the last survivor.

4. Wherefore, a creditor, attaching the interest of one of the primary beneficiaries, by writ served upon the trustee after the death of the debtor, must be confined to the share of the income accruing to the primary beneficiary before the latter's death.

Before STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 62 July Term 1889, Sup. Ct.; court below, number and term not given.

On May 5, 1888, Peter C. Hollis and John S. Wise, executors of the will of Franklin A. Comly, deceased, filed their account showing a balance due the estate, of income $6,334.13, and of principal, consisting of securities and cash, $149,056.51. Thereupon, no exceptions having been filed, *Mr. Montgomery Evans* was appointed auditor to report a distribution.

The auditor subsequently filed a report finding that the testator died on April 23, 1887, testate, leaving to survive him neither widow nor children, but next of kin as stated in the opinion of the Supreme Court. By his will, wholly written by himself, dated June 27, 1885, and duly admitted to probate on April 28, 1887, after making certain specific bequests, he provided as follows:

"I do hereby give to Peter C. Hollis and John S. Wise all my property and estate of whatsoever kind in trust (i. e. not otherwise hereinbefore or hereinafter disposed of) to be held by them for the use and purpose herein named, to wit: The yearly income from said estate to be divided into four equal parts, one fourth part to be paid to my sister Sarah W. Pax-

---

* Cf. McKee's App., 104 Pa. 571; Ashton's Est., 134 Pa. 390.

son, one fourth part to be paid to my brother Joshua Comly, one fourth part to be paid to my niece Emma P. Trexler, and one fourth part to be paid to my nephew Franklin A. Comly, Jr.; said yearly income to be paid to them quarterly or half yearly, as may be most convenient, so long as any of the said legatees may live, it being my wish and direction that the trust estate shall be kept together as a whole until the death of all the said legatees; and upon the death of any one of them, then the part payable to such deceased legatee shall be paid to their heirs, assigns, or legal representatives, as the case may be, and upon the death of all four of the legatees, then the principal of the trust estate to be divided into four equal parts, and one fourth part paid over to the heirs, assigns or legal representatives of each of the four legatees."

Letters testamentary were issued to Peter C. Hollis, and John S. Wise, the executors named in said will.

The auditor found also that Joshua Comly, named in the foregoing provision, was indebted to the testator in the sum of $90, borrowed money, evidenced by a note dated December 22, 1886, and payable on demand; and that on June 10, 1887, said Joshua Comly executed a note under seal to Lucressa R. Righter, with warrant of attorney to confess judgment for $4,848.46, and on the same day judgment was entered thereon and an attachment-execution immediately issued and served upon the accountants as garnishees. Said Joshua Comly died insolvent on November 20, 1887, leaving a widow, Catharine Comly, and a daughter, Mrs. Lizzie Purviance.

The contention before the auditor was, who was entitled to the one fourth part of the income, accrued and accruing, and by the will made payable to Joshua Comly,—the attaching creditor, or the widow and daughter of said Joshua Comly?

The auditor, in an elaborate report, citing Bentley v. Kauffman, 86 Pa. 99; Muhlenberg's App., 103 Pa. 587; 2 Williams on Exrs., 1129, 1131; Roper on Legacies, 124; Cox v. Curwen, 118 Mass. 198; 1 Redf. on Wills, 406; 2 Jarman on Wills, 94, 654; Ralston v. Waln, 44 Pa. 279; Fleck's Est., 1 Pars. 126; Mark v. Hunsicker, 1 Pears. 513; Griffith v. Woodward, 1 Y. 316; Oswald v. Kopp, 26 Pa. 516, concluded:

"The auditor finds as a conclusion of law that Joshua Comly was entitled to receive the one fourth part of the income, dur-

ing his life, and a further right to dispose of that income by will, assignment or otherwise, during the life of the survivor of the legatees named with him, and of the fourth part of the principal which will become payable at such survivor's death; and if he make no such disposition, then his interest will go to his legal representatives. If the auditor be correct in his view, then it follows that Joshua Comly's share of income and principal, being vested in him, is subject to the attachment-execution; and, after that shall have been satisfied, his further interest will be payable to an administrator of his estate."

The auditor, therefore, reported a distribution awarding to Lucressa R. Righter, the attaching creditor, the sum of $1,560.23, being the one fourth of the income accounted for, increased by a small surcharge, less $90 payable upon the note to the testator.

To this report, Mrs. Catharine Comly and Mrs. Lizzie Purviance filed exceptions. Said exceptions having been argued, the court, WEAND, J., on April 15, 1889, entered a decree, without opinion filed, dismissing the exceptions and confirming the distribution reported by the auditor. Thereupon, the exceptants took this appeal, specifying the dismissal of their exceptions and the confirmation of the auditor's report for error.

*Mr. N. H. Larzelere* (with him *Mr. M. M. Gibson* and *Mr. Samuel Dickson*) for the appellants.

That the trust was an active one, counsel cited: Rife v. Geyer, 59 Pa. 398; Hutchison's App., 82 Pa. 509; Earp's App., 75 Pa. 119; Ashhurst's App., 77 Pa. 464. That the gift of the income for life is distinguishable from the gift of a life-estate, and is not an estate for life, or the equivalent of a life-estate: Kline's App., 117 Pa. 139; Joyce's Est., 21 W. N. 510; Earp's App., supra; McDevitt's App., 113 Pa. 103; Fowler's App., 125 Pa. 388. That the words "heirs or legal representatives" meant the next of kin and distributees: Potter's Est., 13 Phila. 318; Eby's App., 84 Pa. 241; Stook's App., 20 Pa. 349; Shuman v. Walker, 1 Chest. Co. R. 170; Ralston v. Waln, 44 Pa. 283; Gibbons v. Fairlamb, 26 Pa. 217.

*Mr. John G. Johnson* (with him *Mr. Bernard Gilpin*), for the appellees.

Counsel cited : Theobald on Wills, 335, 370; Reed's App., 118 Pa. 221; 1 Roper on Leg., 124, 134.

OPINION, MR. JUSTICE STERRETT :

This contention hinges on the construction of a clause in the olographic will of Franklin A. Comly, a successful and intelligent business man, who died April 23, 1887, at the age of 73 years, unmarried and without issue.

It appears from the learned auditor's report that testator's property was all personal, consisting mainly of stocks and securities of railroad, iron manufacturing and other companies, with which he had been actively identified, amounting to about $150,000. At the time of his decease, and for many years prior thereto, he was president of the North Pennsylvania Railroad Company, and owned stock thereof to the value of $65,000. His next of kin, according to our statute of distributions, were :

1. The issue of a sister, Sarah W. Paxson, who died about two weeks before testator, but more than a year after he made his will, leaving to survive her one son and two widowed daughters.

2. The issue of a brother, Samuel W. Comly, who pre-deceased the testator about three years leaving issue a son, Franklin A. Comly, Jr., who is unmarried and about thirty-two years of age, and a daughter, Emma P., wife of William F. Trexler, aged about thirty-five years and having three children whose ages are fifteen, thirteen, and eleven years, respectively.

3. A brother, Joshua Comly, who at the time of testator's death was suffering from a disease known to both of them to be incurable, and of which he died about six months thereafter, insolvent, leaving to survive him a widow, Catharine Comly, and one daughter, Mrs. Purviance, the appellants in this case.

After making several specific bequests, the testator in his last will and testament, dated June 27, 1885, gave the residue of his estate " to Peter Hollis and John S. Wise," in trust as follows :

" To be held by them for the use and purpose herein named, to wit, the yearly income from said estate to be divided into four equal parts, one fourth part to be paid to my sister, Sarah W. Paxson, one fourth part to be paid to my brother Joshua

Comly, one fourth part to be paid to my niece Emma P. Trex-
ler, and one fourth part to be paid to my nephew Franklin A.
Comly, Jr.; said yearly income to be paid to them quarterly or
half yearly, as may be most convenient, so long as any of the
said legatees may live, it being my wish and direction that the
trust estate shall be kept together as a whole until the death
of all, the said legatees; and upon the death of any one of
them, then the part payable to such deceased legatee shall be
paid to their heirs, assigns, or legal representatives, as the case
may be, and upon the death of all four of the legatees, then
the principal of the trust estate to be divided into four equal
parts, and one fourth part paid over to the heirs, assigns, or
legal representatives of each of the four legatees."

The corpus of the trust-estate, less expenses of administra-
tion, etc., to wit, $148,437.50, was properly awarded to the
trustees, to be held in trust according to the provisions of the
will.     The net amount of income accrued and unpaid, as found
by the auditor, was $6,600.93, one fourth of which, $1,650.23,
was awarded to the three children of Mrs. Paxson, and the
same sum each to Mrs. Trexler and Franklin A. Comly, Jr.
No question is raised as to the disposition thus made of the
corpus of the trust, or either of the three shares of accrued in-
come.     The remaining one fourth of the income, viz., $1,650.23,
was awarded to Mrs. Lucressa R. Righter, on account of debt
and costs of attachment-execution, 543 June Term 1887, Com-
mon Pleas of Philadelphia, against Joshua Comly.     It is con-
ceded by appellant that the attaching creditor is entitled to
one fourth of the income which accrued prior to the death of
Joshua Comly, less the amount of the note, viz., $606.58, but
they deny that she is entitled to any part of the income which
accrued after his decease.     As to that, their contention is that
it belongs to them as beneficiaries of the trust, according to its
terms.     In other words, they claim that, upon the death of
Joshua Comly, the trust as to him ceased, and thereupon they
became the designated beneficiaries thereof.

The correctness of that position depends on the intention of
the testator as gathered, not from a single clause, but from the
four corners of his will.     It cannot be doubted that he created
an active and valid continuing trust for the management of
his residuary estate, the payment of the income thereof to the

four primary objects of his bounty during the terms of their respective lives, and the preservation of the corpus for distribution upon the death of the last survivor of them. It does not appear to have been his intention to give either of the four beneficiaries for life any interest in, or control over, either the corpus of the trust, or the income arising therefrom, except so much of the latter as accrues during his or her lifetime. The income is expressly limited to each of them, respectively, for life, and was doubtless intended as a purely personal benefit, terminating at his or her decease. Hence it was necessary to designate the person or persons to whom the trustees should pay the income accruing after the death of each of said beneficiaries, except the last survivor, and the testator undertook to do so by directing that it should be paid to the deceased beneficiary's "heirs, assigns, or legal representatives, as the case may be." The phrase thus employed is evidently intended to designate, not by name, but by description, the person or persons to whom, in each contingency, the one fourth of the income should be thereafter paid, thus making a quasi substitutionary gift of the income to them. The leading word, expressive of the testator's thought, is "heirs;" a technical word, not applicable to a gift of personalty, but popularly understood, when so applied, in the sense of the next of kin according to our statute of distributions; and that is the sense in which the phrase would be generally understood by laymen. While there is some room for difference of opinion on the subject, the weight of authority is that the word "heirs," when used in a limitation of personal property to the heirs of the first taker, either substitutionally or by way of succession, is understood as meaning those entitled under the statutes of distribution in case of intestacy: Eby's App., 84 Pa. 241; Morton v. Barrett, 22 Me. 264; Mace v. Cushman, 45 Me. 250, 261; Houghton v. Kendall, 7 Allen 72, 77; Sweet v. Dutton, 109 Mass. 589; Finlason v. Tatlock, L. R. 9 Eq. 258.

The words "assigns or legal representatives," following the word "heirs," in the will before us, are referable, we think, to the latter word, "heirs," as though the testator had directed that the income payable to the deceased beneficiary for and during his life only, should from and after his decease be paid to his heirs and their assigns or legal representatives. In con-

Opinion of the Court.

struing the will before us, the fact that the testator was not a lawyer must not be overlooked. It may be fairly assumed that in writing the will he employed popular, rather than technical language. Doubtless, the first reading of the will would convey to nearly every layman the impression that the testator not only intended his brother's interest should terminate with his life, but also that, upon his death, his share of the income, and ultimately the corpus from which it accrued, should pass, immediately and by virtue of the will, to those whom the intestate law would designate as his brother's distributees. Such an idea as the continuance of his brother's interest, after death, until the termination of the trust, would never occur to his mind, because it is essentially technical. The death of his brother and the use of the word "heirs" simply marked the time of change in the beneficial ownership. The testator's intention, we think, was to give his brother a purely personal benefit. The gift is expressly for his life, and the language following imports an absolute gift to his "heirs," as such. There is nothing on the face of the will to indicate any intended benefit to his creditors. On the contrary, the fact of the creation of the trust, and the use of the word "heirs," in the sense in which it must have been employed, show rather an exclusion of them. After his brother's death, his "heirs," used in the sense of next of kin under the intestate law, and not his brother's "assigns or legal representatives," appear to have been testator's first thought. The transmission of beneficial ownership, upon his brother's death, was immediate and direct to the "heirs" or next of kin of the latter, their "assigns or legal representatives, as the case may be."

We are therefore of opinion that the court erred in awarding one fourth of the income (less $90 to the executors in payment of the note of Joshua Comly, deceased), to the attaching creditor; that she is entitled only to one fourth of the income which had accrued prior to the decease of said Joshua Comly, less said sum of $90, to wit, $606.58, and the said appellants are entitled to the residue of the income for distribution.

It is therefore ordered and decreed that so much of the decree as awards $1,560.23 to Bernard Gilpin, attorney for Lucressa R. Righter, on her attachment-execution, etc., be reversed, and

Syllabus.

set aside, at the costs of appellee ; and the said sum of $1,560.23 is now distributed as follows, to wit:

| | | |
|---|---|---|
| To Bernard Gilpin, atty., etc., | . . . | $ 606 58 |
| " Catharine A. Comly, widow., | . . . | 317 88 |
| " Lizzie C. Purviance., | . . . . | 635 77 |
| | | |
| Total sum., | . . . . | $1,560 23 |