## Beck's Estate.

*Will—Devise—Heirs—Construction of will.*

1. The word "heirs" when used in a will is to be understood in its legal or technical sense, unless there be something in the context showing that the testator meant it to be understood in its popular sense.

2. In its legal and technical sense the word "heir" is understood as designating the persons appointed by law to succeed in case of intestacy, and whenever the word occurs in a will unaccompanied by qualifying or explanatory expressions, it must be allowed the meaning the law gives it, and those only will come within the class thus described who would take under the intestate laws. And where qualifying expressions are relied on to give other than technical meaning, these must be so direct and unequivocal as to imperatively require such interpretation.

3. A testator may doubtless use the word "heirs" as synonymous with "children," but his intent thus to use it must be gathered from something more than implication. It must be expressed.

4. Testator at the time of the making of his will had nine children. Five of them had separate homes, and to these five he had made advancements of an equal sum to each. Of the remaining children three were mutes. To the four remaining children he gave his mansion farm at a valuation which would advance them correspondingly with the other five children, and then directed that the remainder of his real and personal estate should be converted and distributed to and among his lineal heirs share and share alike. The devise of the mansion farm was, "to my youngest sons (naming them) and to my two daughters (naming them) to be held jointly and equally—and in the case of the death of one, then that portion shall descend to the other three, and so on until the death of the last one of the aforesaid children, at which time I direct my executors—that they expose the said real estate to public sale, and divide the proceeds equally among their heirs, share and share alike." Three of the devisees died intestate, unmarried and childless. The other, a son, died leaving a widow and three children. *Held*, that the son's children were not entitled to the whole of the proceeds of the sale of the mansion farm, but that the same should be divided per stirpes among the heirs of the four devisees, and as such the son's children were entitled to one share.

Argued April 22, 1909. Appeals, Nos. 125, 126 and 127, Jan. T., 1909, by Viola Beck et al., from decree of O. C. Huntingdon Co., dismissing exceptions to auditor's report in Es-

tate of Jacob Beck, deceased. Before FELL, BROWN, MES-
TREZAT, POTTER and STEWART, JJ. Affirmed.

Exceptions to report of T. W. Myton, Esq., auditor. Be-
fore WOODS, P. J.

The opinion of the Supreme Court states the case.

*Error assigned* was decree dismissing exceptions to audi-
tor's report.

*J. F. Schock* and *H. H. Waite*, for appellants.—To sustain
the contention of the appellants it is only necessary to give
the term, "their heirs," as used in the will the meaning of
"their children," or "their lineal heirs." This may be done
to effectuate the clear intention of the testator: Braden v.
Cannon, 1 Grant, 60.

Joint tenancy with the incident of survivorship may be
created by will: Jones v. Cable, 114 Pa. 586; Man's Est., 2
Pa. Dist. Rep. 830; Lamb v. Lamb, 8 Watts, 184; Cowden's
Est., 2 Montg. 177.

The heirs of a testator are to be determined at his death.
Those of another person (the life tenants in this case) may be
determined at a later period: Breese's Est., 2 Pa. Dist. Rep.
364; 32 W. N. C. 166.

The fund for distribution is distributable as money, there
having been conversion by the direction in the will of Jacob
Beck, that the land be sold by his executors and the money
divided: Ingersoll's Est., 167 Pa. 536; Lackey's Est., 149 Pa.
7; McWilliams' App., 117 Pa. 111.

*W. I. Woodcock*, with him *W. H. & J. S. Woods* and *W. M.
Henderson*, for appellees.—The word "heirs" ex vi termini
implies representation, "and in this respect its meaning is not
changed by being coupled with the word 'children':" Ash-
burner's Est., 159 Pa. 545; Guthrie's App., 37 Pa. 9; Ashton's
Est., 134 Pa. 390.

It is a general rule that where there is an antecedent, ab-
solute gift, independent of the direction and time of payment,

the legacy is vested: McClure's App., 72 Pa. 414; Lane v. Goudge, 9 Ves. 225; Balmain v. Shore, 9 Ves. 500; Manderson v. Lukens, 23 Pa. 31; Womrath v. McCormick, 51 Pa. 504.

OPINION BY MR. JUSTICE STEWART, October 11, 1909:

These several appeals are from the same decree: they present the same questions, and may be disposed of together.

If the particular gift here to be considered should be thought singular, some reason for it will be found in the peculiar situation with respect to his family which confronted the testator when he came to make final disposition of his estate. He was the father of nine children, five of whom had left the family home and were living in established homes of their own. To each of these testator had advanced the sum of $2,000, and had charged them each with this sum in his book of advancements. Of those remaining all with the exception of Catherine, an unmarried daughter, were mutes. To these four, Abednego, John, Catherine and Nancy, he gave his mansion farm at a valuation which would advance them correspondingly with the other five children, and then directed with respect to the balance of his estate, which included another farm, that it should be converted and distributed to and among his lineal heirs, share and share alike. The devise of the mansion farm was as follows, "To my two youngest sons, Abednego and John, and to my two daughters, Catherine and Nancy—to be held jointly and equally—and in the case of the death of one, then that portion shall descend to the other three, and so on until the death of the last one of the aforesaid children, at which time I direct my executors—that they expose the said real estate to public sale, and divide the proceeds equally among their heirs, share and share alike." Abednego, Catherine and Nancy died in the order named, unmarried and childless. John, the last survivor, left a widow and three children. The present controversy arises over the distribution of the proceeds of sale of the mansion farm devised as above. The auditor holding to the view that the word "heirs" as it occurs in the gift was to be interpreted according to its strict, legal and technical

meaning, and deriving from the general scheme of the will a controlling purpose to have the heirs share as classes, divided the fund accordingly and distributed it per stirpes, that is to say, in six equal parts, awarding to the children of the deceased brother and the children of the deceased sisters their parent's share. The distribution so made was confirmed, and from the decree of confirmation John's children appealed, their contention being that by the word "heirs" testator meant the lineal heirs or children of the devisees of the mansion farm, and that inasmuch as they alone answered this description the whole fund should be awarded to them. This position can be maintained only as it can be shown from the will itself that the testator used the word "heirs" in its popular rather than its technical sense. "The word 'heirs' when used in a will is to be understood in its legal or technical sense, unless there be something in the context showing that the testator meant it to be understood in its popular sense:" Porter's App., 45 Pa. 201; Eby's App., 50 Pa. 311. In its legal and technical sense the word "heir" is understood as designating the persons appointed by law to succeed in case of intestacy, and wherever the word occurs in a will unaccompanied by qualifying or explanatory expressions, it must be allowed the meaning the law gives it, and those only will come within the class thus described who would take under the intestate laws. And where qualifying expressions are relied on to give other than technical meaning, these must be so direct and unequivocal as to imperatively require such interpretation. "A testator may doubtless use the word 'heirs' as synonymous with children, but his intent thus to use it must be gathered from something more than implication. It must be expressed:" Criswell's App., 41 Pa. 288. An examination of the will before us reveals nothing that gives any reason for supposing that the testator understood and used the word in any more restricted or qualified sense. It is significant that in disposing of the residue of his estate he directed an equal distribution of the same among and between his own lineal heirs, while with respect to this particular fund he directs an equal distribution among the heirs of the devisees of

the farm. But such circumstance makes rather against than for appellant's contention. When a testator uses terms of technical import differing in signification from those used with respect to wholly distinct and separate bequests, such circumstance in itself affords no ground for inference that he used them as equivalent, the presumption rather being that he used them with intelligent discrimination to indicate his exact purpose. Here everything in the will indicates an intelligent understanding of the difference between the words "heirs" and "lineal heirs," and a discriminating and purposeful use of them. Twice in the will, in connection with the gift over, those who are to take are described simply as the heirs of the first takers. All agree that the general scheme of the will contemplates an equal distribution of the entire estate between all of testator's children, as far as practicable. The will clearly discloses such a purpose. Were we to give to the word "heirs" the meaning contended for by appellant, such purpose would be defeated, since the share received by John and his children would in such event be largely in excess of that received by others standing in equal degree. In construing the word "heirs" according to its legal meaning the court below adopted the correct view.

The heirs of the four devisees of the mansion farm were a surviving brother, Jeremiah, two surviving sisters, Mrs. Gray and Mrs. Buck, the children of Mrs. Henderson, a deceased sister, the children of Mrs. Buck, also a deceased sister, and the children of John, here the appellant. By the mode of distribution adopted the fund was divided into six equal parts, and distributed per stirpes, the children of those deceased taking their parent's share. We do not understand that the correctness of this mode is questioned. If John's children are entitled to take simply as heirs, their advantage lies in a per stirpes rather than a per capita distribution, and hence they are not objecting to the mode, should failure follow their effort to establish their right as sole legatees. This with the fact that we have no appeal but on behalf of John's children shows acquiescence on the part of all in the method adopted. We are therefore relieved from inquiry with re-

spect to it. We may, however, add, that it finds strong support in Miller's App., 35 Pa. 323, and in the later case of Hoch's Est., 154 Pa. 417. The decree is affirmed, and appeals are dismissed at costs of appellants.