Bowen's Estate.

Argued October 6, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER, RHODES, and HIRT, JJ.

524

*Bert W. Levy,* with him *Myron Jacoby,* for appellants.

*Samson McDowell,* with him *Robert H. Morrow, John D. McMullin, George B. Harvey* and *Thomas Biddle Ellis,* for appellees.

OPINION BY HIRT, J., April 10, 1940:

This is an appeal from the decree of the Orphans' Court of Philadelphia County distributing the last of several trust funds created by the testatrix for the benefit of her grandchildren.

Delphine Bowen, who will be referred to as the decedent, died February 26, 1879 leaving to survive her, one son, and a daughter Ellen M. Ash. The daughter died in 1913 leaving three children one of whom was Gordon M. Ash who died on September 20, 1936 leaving a widow but no issue. The construction of the 11th paragraph of the will, as applied to the distribution of the trust for the benefit of Gordon M. Ash, is the subject matter of this appeal. That paragraph provides: "I give and bequeath to John C. Allen and William L. Mactier their Heirs, Executors and Administrators [now Fidelity-Philadelphia Trust Company and Henry C. Brengle, substituted trustees] the sum of Twenty

thousand Dollars In Trust to invest the same securely and in like manner to invest and reinvest the interest as often as the same shall accrue for the benefit of Delphine H. Ash, Frank R. Ash and Gordon M. Ash, the children of my daughter Ellen M. Ash until my said grandchildren shall respectively arrive at the age of twenty one years after which time, I hereby direct my said Trustees to pay over the net income of the share such child should receive upon an equal division of said sum of Twenty thousand Dollars unto such child coming of age for his or her sole and separate use and benefit free from any debts or claims of whatever kind or nature.

"And upon the death of either of my said grandchildren the share which would have gone to such deceased child shall descend unto *the heirs of such child in the same manner* as is provided in the Tenth section of this my Will in regard to *the issue* of my grandchildren Charles D. Harland and Ellen E. Crowell."

Delphine H. Ash and Frank R. Ash, the other two children of Ellen M. Ash, named in the provision of the will quoted above, both died before the date of death of Gordon M. Ash, each of them leaving issue. Margaretta Farrel Rogers, the daughter of the former, received the trust estate of her mother and Frank R. Ash, Jr., and Ray M. Worthington children of Frank R. Ash received the trust estate created for their father, on final distribution. These distributees are the appellants herein.

In the eighth and ninth paragraphs of her will, decedent had created similar trusts for the benefit of two of the children of her son, Henry L. Harland. With these trusts we are not concerned, except as to the manner of their distribution as directed in the 10th paragraph, on the death of the cestuis que trustent. How these trust funds were to be distributed becomes relevant, by the reference in the 11th paragraph, above quoted, to the 10th paragraph of the will for the method

of ultimate distribution of the trust which is the subject of this appeal. The 10th paragraph of the will provides: "Upon the death of either of my said grandchildren Charles D. Harland and Ellen E. Crowell leaving any lawful issue to survive him or her at the time of his or her decease, I give and devise the sum of Ten thousand Dollars held in trust for said decedent unto the Trustees hereinbefore mentioned and the survivor of them, their and his successors in the said Trust duly appointed as hereinafter mentioned To hold the same during all the term of the minority of the said children respectively. In Trust to keep the same properly invested and to collect the income thereof and pay over said net income unto the legal Guardians of such *issue* of either of them my said grandson or granddaughter in equal shares in half yearly payments, and upon the arrival at the age of Twenty-one years respectively *of the said children* of my said grandchildren the said Trustees shall pay over, assign and distribute to every *such child* his or her equal share of the capital or principal of the aforesaid sum held by my said Trustees for the benefit of his or her deceased parent absolutely for the only proper use of such issue respectively their respective heirs Executors, administrators and assigns forever." In both of the above quotations from the will we have italicized the words which become especially important in ascertaining the intention of testatrix.

It is axiomatic that the construction of a will involves an intensive examination of its several provisions in proper relation to a consideration of the will as a whole, to find out what the testator intended. When the intention is disclosed, effect must be given to the testator's plan of distribution. In seeking out that intention, precedents are of little value: *Selser's Estate*, 135 Pa. Superior Ct. 480, 5 A. 2d 632, except those principles of construction which have guiding force because of their general application.

At the outset we must bear in mind that we are dealing with a will obviously drawn by one who had regard for a nice use of language and for its legal effect and "Where a will is artistically drawn, and evinces an accurate use of technical terms, the presumption that the testator used them in their legal sense, will not be so easily overcome as if the will bears on its face evidence that it was drawn by an illiterate man": Headnote in *Porter's Appeal,* 94 Pa. 332. The will indicates a settled plan of distribution with no expressed intention that the individual members of the two branches of decedent's family should be treated alike. See *Bowen's Est.,* 14 D. R. 157.

The lower court held that the provision that the estate "shall descend unto the *heirs* of such child" coupled with the direction that it shall be paid in the manner provided in another paragraph of the will distributing a fund to the "issue" of other legatees, indicates that "heirs" and "issue" were used in the same sense and that the word "heirs" because of the reference, means "heirs of the body or children." We are convinced that the testatrix did not so intend. Throughout the will she appropriately used "issue" and "children" interchangeably as words of purchase. The use of "heirs" as a word of purchase appears only once and then in the disputed paragraph and nowhere else in the will. There is no indication of an indiscriminate use of the three words to convey the same meaning and reserving the use of the word "heirs" for this particular provision of the will is significant. " 'A testator may doubtless use the word 'heirs' as synonymous with children, but his intent thus to use it must be gathered from something more than implication. It must be expressed:' *Criswell's App.,* 41 Pa. 288. An examination of the will before us reveals nothing that gives any reason for supposing that the testator understood and used the word in any more restricted or qualified sense. ...... [The same may be said of the will in the present

528

case.] When a testator uses terms of technical import differing in signification from those used with respect to wholly distinct and separate bequests, such circumstance in itself affords no ground for inference that he used them as equivalent, the presumption rather being that he used them with intelligent discrimination to indicate his exact purpose": *Beck's Estate*, 225 Pa. 578, 74 A. 607. This is a well settled rule of construction and since the intention of testatrix as indicated by the will as a whole, does not invest the reference clause of the 11th paragraph with any greater force, it must be construed as governing the *manner* of distribution and not as determining the *identity* of the distributees. "Where there is an absolute gift, coupled with referential expression, such as 'in the same manner,' such expressions, in general, determine not *who* shall take a legacy, but *how* the legatee shall take ......": Jarman on Wills (7th Ed. 1930) 664.

The trust does not fall into the residuary estate and must be distributed to the "heirs" of Gordon M. Ash. In its original sense the word "heirs" meant those persons appointed by law to succeed to the real estate of a decedent and "could not be used to designate those on whom the goods or chattel property were cast, because the law cast them upon no one." But in modern practice the word is commonly used to indicate those taking property of any kind by the law of inheritance: 9 R. C. L. 23. Appellants are the next of kin of Gordon M. Ash and, as to personal property, the next of kin bear the same relation as "heirs", as the word is used in its primary sense, do to realty: *Tillman v. Davis*, 95 N. Y. 17. By usage, "heirs" is an apt word and has acquired a definite meaning in the disposition of personal property. When not qualified or explained it includes next of kin: *Comly's Estate*, 136 Pa. 153, 20 A. 397.

But appellants, the nephews and niece of Gordon M. Ash are not his only "heirs" entitled to participate in

the distribution of personal property. His widow unless otherwise barred, (Act of June 7, 1917, P. L. 429 §6; 20 PS 42), is within the class entitled to share in the fund, the interest of each of them to be determined by the Intestate Act, the applicable statute of distribution. Where the word "heirs" is used in a bequest of personalty it means heirs as ascertained by the statutes of distribution, unless a contrary intent is indicated by the will. *Simpson's Estate,* 304 Pa. 396, 156 A. 91; *Wunder's Estate,* 270 Pa. 281, 113 A. 378; *Comly's Estate,* supra. "In its technical sense, the word 'heirs', employed by the testator in this case, is inapplicable to a disposition of personal property, but in its popular meaning the word has a much wider signification. When used in a gift of personalty, it is very frequently employed to denote those [including the widow] who are entitled to take under the statute of distributions, unless there is something in the context to indicate a contrary intention": *Ashton's Estate,* 134 Pa. 390, 19 A. 699. This conclusion is reasonable, since, under the statute of distribution, a surviving spouse in addition to a specific sum, now takes a share of the estate along with the heirs at law.

Decrees reversed, and distribution is ordered in accordance with this opinion; the costs to be paid by the estate.