## Buckley's Administrators *versus* Reed.

| 15  | 83 |
| 199 | 69 |
| 199 | 70 |

A testator directed his real and personal estate to be sold by his executors, and $1000 of the proceeds to be invested by them, and the interest thereof to be annually paid to his widow during her life ; that a small amount be paid to one of his children, in full of his share, and the net proceeds of his estate to be equally divided between his "remaining children, share and share alike, and at the time of their severally arriving at the age of twenty-one years;" and at the decease of his said wife, "*that part of my estate set apart for her use shall then be divided amongst my surviving children or their heirs, as last above directed :*"

*Held,* that the shares of the legatees in the sum to be invested for the use of the widow during her life, were *vested* interests, though not payable till their arrival severally at the age of twenty-one years, and at the death of one of the daughters, *during the life of the widow,* her share was payable to the administrator of her estate.

ERROR to the Common Pleas of *Lycoming county.*

This was a case stated between George Reed, administrator of Matilda Reed, deceased, plaintiff, and Clemson Buckley and Thomas W. Lloyd, executors of the last will and testament of John Buckley, deceased. Case stated to be entered in the Common Pleas of Lycoming county. The parties agree to the following facts, to be considered in the nature of a special verdict, for the decision of the court as to matter of law, with liberty to either party to sue out a writ of error.

John Buckley, now deceased, during his lifetime made his last will and testament in the words following, to wit :—

I, John Buckley, of Fairfield township and county of Lycoming, being in a weak state of health, and possessing my usual soundness of mind, and aware of the uncertainty of human life, do make this my last will and testament. As to such worldly estate as it has pleased God to intrust me with, I dispose of the same as follows :—First, I direct that all my debts be paid as soon after my decease as possible, of the first moneys that shall come into the hands of my executors, from any part of my estate ; also, I direct that all my real and personal property be sold for its reasonable value, (except such parts of it as may be reserved for the use of my family.) The real estate of which I shall die possessed, shall be sold by my executors, within five years after my decease, and the amount thereof secured in such manner as is usual in like cases. To insure the full and punctual payment thereof, and to effectuate this my intention, I do hereby invest in my executors full power and authority to dispose of my real estate in fee simple, in as full and ample manner, in every respect, as I could myself do if living. Also, I direct that the best articles of household goods, such as beds, bedding, and the best furniture, be and remain the absolute property of my beloved wife. Also, I direct that the sum of $1000 be invested by my executors in some secure stock, or loaned on real

estate, at their discretion, and the interest thereof to be annually paid to my wife, for and during her life.   I also direct that my son Johnson shall be paid $25 at the time of the sale of my real estate, which shall be his full share and purpart of my estate.   Also, I direct that the net proceeds of my estate, heretofore ordered by me to be disposed of, shall be equally divided between my remaining children, share and share alike, and at the time of their severally arriving at the age of twenty-one years.   And at the decease of my dear wife, that part of my estate set apart for her use shall then be divided amongst my surviving children or their heirs, as last above directed.

After making the foregoing will and testament, the testator died, leaving a widow mentioned in said will, and *nine children,* one of whom was named Johnson, who has since died, and *among whom was Matilda, formerly wife of the plaintiff.*   The said Matilda Buckley, while under the age.of twenty-one years, intermarried with George Reed, the plaintiff, *and, in* 1842, *died,* being still under twenty-one years of age, and left no issue.   The said testator, during his lifetime, sold his real estate, and a certain amount of the purchase-money secured by bonds remained unpaid at the time of his death.   The $1000 directed by the foregoing to be placed at interest by the executors, and such interest to be paid to the widow, have not been invested by them, but the widow has received interest from time to time, from the purchase-money secured by bonds as above stated.   The executors purchased for the widow and family a tract of land containing about sixty acres, which, with an additional building erected by them upon it, cost the sum of $1000 or thereabouts.   After the death of his wife, George Reed, the plaintiff became her administrator, and continues so to be.   That on a former case stated, (which is also made a part of this case stated,) which was taken to the Supreme Court, and argued at the July term 1843, the Supreme Court decided that said legacy vested in George Reed, the administrator, as fully as it would in his wife, if living, after twenty-one years of age; but Judge SERGEANT, who delivered the opinion of the court, observes, in the latter part of the opinion—"In this opinion the court does not decide on the question stated in the case, as to the rights of any persons whatever, in the sum payable after the death of the widow.   These rights must be left to be settled hereafter, when the claims shall arise."   (See 5 *W. & Ser.* 519.)   *That in October* 1847, *the widow of John Buckley died intestate.*   Under the above statement of facts in connection with said will, what interest (if any) has George Reed, the plaintiff, in the real estate purchased as aforesaid, for the use of the widow of said testator, or in the proceeds of sale thereof, or in the money appropriated by said executors in the purchase and improvement of sixty acres of land?   If the court should be of opinion that said George Reed, in right of his wife Matilda,

is entitled to a share of said acres of land, or the proceeds of sale thereof, or of the money appropriated by said executors in the purchase and improvement of said sixty acres of land, then judgment to be entered for plaintiff. Otherwise, judgment to be entered for defendants, with leave to sue out writ of error as aforesaid.

Judgment was entered by ANTHONY, J., for the plaintiff, on the case stated.

It was assigned for error:

The court erred in giving judgment in favor of the plaintiff, and should have given judgment for the defendants.

The case was argued by *Bancroft*, for plaintiffs in error, the executors.

*Miller*, for Reed, defendant in error.

The opinion of the court was delivered July 22, by

BELL, J.—Although when this will was first before us, the court disclaimed an intent to pass upon the rights of those who might be in a position to claim an interest in the sum to be divided after the death of the testator's widow, I regard the question of construction now presented, as in effect answered by that decision.

The testator directed his real and personal estate to be sold (with some unimportant exceptions) and the net proceeds to be divided among the children, "share and share alike," and at the times of their severally arriving at the age of twenty-one years; excepting, however, from the primary disposition, $1000 of the whole sum, which he ordered to be placed at interest, for the use of his widow, and at her decease to be divided amongst "my surviving children, or their heirs, as last above directed." And it was held that the legatory shares, payable before the death of the widow, were vested interests, passing immediately to the legatees, though not payable to them respectively until each attained full age. But it is obvious that, in this respect, the testator intended, by the subsequent direction, to establish no distinction between the sums distributable before the decease of his widow and that to be enjoyed after her death. His evident object was to give all he possessed to the same persons; but, from necessity, different periods were designated as the times of actual enjoyment, in the event of his widow surviving the moment when the eldest child should attain his majority. It is as if he had said, I give all my effects to my children, to be divided between them, share and share alike, one part whereof is to be paid in equal proportions to each, when they respectively reach the age of twenty-one years, and the other portion to be paid to them, in like manner, after the death of my widow, to whose use I bequeathed the latter portion during her life. Thus stated, it is clear that if the first-mentioned portion be vested in the benefi-

H

ciaries, individually, on the death of the testator, the second portion
is equally so. Indeed, when construing these clauses, on the former
occasion, the court found a very influential reason for holding the
first-mentioned portion to be vested, in the peculiar form of lan-
guage employed to direct the second payment. After citing it, it
was observed, "Here it is clear, that by the decease of his children,
before the death of his wife, the legacy would not be lapsed," and
it was added, "the understanding of the testator would seem to be
that both clauses, in this respect, were alike:" 5 *W. & Ser.* 519. To
me, this is so apparent, I feel no hesitation in saying, that when
the meaning of either of the clauses is ascertained, the other is
necessarily discovered. But if the latter clause stood alone, de-
riving no aid from what precedes it, its proper interpretation is
judicially determined by Patterson *v.* Hawthorn, 12 *Ser. & R.* 112,
and King *v.* King, 1 *W. & Ser.* 206. Both these are cases upon
testaments, in which the disputed clauses are very similar to that in
question here. In each of them a sum was set apart for the use
of the testator's wife during life, and at or after her death to be
equally divided among his children, or *their heirs.* It was adjudged
the latter words were equivalent to "legal representatives," and,
consequently, the intent was, the legacy should be paid to each
child, if living at the time of distribution, and if not, then to the
person who, as its legal representative, was by law entitled to it.
Accordingly, in the first of these cases, the legacy was decreed to
belong to the husband of a female legatee, who had died in the
lifetime of her mother. If it be objected that, in our case, the sum
distributable after the widow's death is payable to the surviving
children, the answer is, it can make no difference in the construc-
tion, even if the survivorship is to be referred to the death of the
widow. For the words, "or their heirs," are used, though awk-
wardly, in an alternative sense, and, therefore, bear the same
meaning as in the cases cited. Our testator could not have meant
that his bounty was to be divided among his surviving *children,* or
*the heirs of such survivors.* There could not, at the moment ap-
pointed for the division, be both survivors and *their* legal repre-
sentatives. Necessarily, then, the true reading is a direction for
division among such of the children as should then survive, and
the legal representatives of those then dead. When, too, it is
recollected that some of the legatees were daughters, who might
marry and bear children, the legal propriety of this reading be-
comes still more obvious. If essential to subserve such a possible
interest, the operation of the word "survivor" would be restrained
to the period of the testator's death. It is scarcely necessary to
add, that the investment of the sum set apart for the use of the
widow, in real estate, can work no change in the rights of the
parties. They have a right to follow the fund.

Judgment affirmed.