Katharine A. Thran, Adam E. Schmidt, Charles G. Schmidt and Frederick C. Schmidt, Appellants, *v.* Harry Herzog, with notice to The Peoples' Trust, Savings and Deposit Company, of Lancaster, Pa., Guardian of George Ralph, Lulu Florence, Hattie Christina, James Edward, Minor Children of George Schmidt, Deceased.

*Wills—Canons of construction—Intent.*

All mere technical rules of construction must give way to the plainly expressed intention of a testator, if that intention is lawful, and it is a rule of common sense as well as of law not to attempt to construe that which needs no construction.

*Construction of words " then living "—General rules.*

The words "then living" will be construed to refer to the death of the testator, unless it clearly appears that he meant it to refer to a different period, and when that intention is apparent the courts have not been prevented by any rule of their own making from carrying it out, even though the result was to make the remainder contingent.

*Will—Words and phrases—" Then living."*

The clause of the will on which the controversy in the case at bar arose is as follows: "I give, devise, etc., all my estate, etc., to my beloved wife, for and during her natural life, or so long as she remains my widow unmarried and after her death or remarriage I give, devise, etc., the same unto all my children then living." *Held*, that the word "then" was used as an adverb of time and not as a conjunction signifying merely, in that case, in that event or contingency, and that it refers to the period of the widow's death or remarriage.

Argued Nov. 15, 1899. Appeal, No. 171, Oct. T., 1899, by plaintiffs, from judgment of C. P. Lancaster Co., June T., 1899, No. 46, in favor of defendants on case stated. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Reversed. Opinion by RICE, P. J. BEAVER, J., dissents.

Case stated. Before LANDIS, J.

It appears from the case stated that J. Adam Schmidt died on February 5, 1890, leaving a last will and testament in which, inter alia, he provided as follows :

552 THRAN v. HERZOG.

Statement of Facts—Assignment of Errors. [12 Pa. Superior Ct.

"First: I give, devise and bequeath to my beloved wife, Christianna Schmidt, all my estate, real, personal and mixed, for and during her natural life, or so long as she remains my widow unmarried, and after her death or remarriage I give, devise and bequeath the same unto all my children, then living, under the following conditions:

"Those of my children from whose marriage offspring may result shall, in case the latter are still living, receive a share more of my estate than those whose marriage has been childless. . . . Furthermore, I decree and devise in particular that the widows of my sons, in case the latter have deceased without living issue, shall possess no claim to my estate whatsoever."

The said widow died on April 23, 1897. At that time the children of said J. Adam Schmidt living were Katharine A. Thran, Adam E. Schmidt, Charles G. Schmidt and Frederick C. Schmidt. George Schmidt, another son, died on November 14, 1895, leaving to survive him a widow, Amanda, and four minor children, viz: George Ralph, Lulu Florence, Hattie Christina and James Edward, of whom the Peoples' Trust, Savings and Deposit Company, of Lancaster, Pa., is guardian.

At the time of the testator's death he was possessed of a lot of ground situated on the west side of South Queen street, in the city of Lancaster, on which is erected three one and a half storied brick dwelling houses, numbered 534, 536 and 538 South Queen street. On January 1, 1899, the above mentioned children of testator, who survived the said widow, entered into articles of agreement with Henry Herzog for the sale of said premises at the sum of $1,415, and on April 1, 1899, they tendered a deed to said Herzog for the same. The purchaser, however, refused to accept said conveyance, averring that the minor children of George Schmidt had, under the will of J. Adam Schmidt, an interest in said real estate, and that their guardian should join in the deed.

The court below entered judgment on the case stated in favor of defendants. Plaintiffs appealed.

*Error assigned* among others was in entering judgment for defendants on case stated.

*John E. Snyder* and *W. U. Hensel*, for appellants.—It will be observed that the word "then" refers to the time when the bequest is to take effect, and that they who are to take under it, are those who are living at a particular time, that is, at the time of the death of the widow, Christianna Schmidt. By no possible construction which may be placed upon the language of this will can it be contended that the word is not used as an adverb of time. This construction is further borne out by the language of the will following. The bequest as stated above is to "all my children then living, under the following conditions," which are two in number : first, "those of my children from whose marriage offspring may result shall, in case the latter are still living, receive a share more of my estate than those whose marriage has been childless." Still living ? When ? At the death of the testator ? No such construction can possibly be forced from the words used by the testator, nor any intention to that effect gathered from the language of his will. It was a condition of this double portion to some of his children, not only that offspring should have resulted from their marriage, but that the offspring should be living at the time fixed for the distribution of his estate upon the death of his wife. This intention is still further shown by the second condition, by which it is directed that his daughter Katie should receive a double portion, whether she had offspring or not: Martin's Est., 185 Pa. 51; Smith on Executory Interests, sec. 281; McBride v. Smyth, 54 Pa. 245; Fairfax's Appeal, 103 Pa. 166.

Where persons must be living at a certain time in order to take an estate, the gift is contingent, because, until the time arrives, the persons who would answer that description cannot be ascertained : Rudy's Est., 185 Pa. 359. See also, Craige's Appeal, 126 Pa. 223, List v. Rodney, 83 Pa. 483, and Buzby's Appeal, 61 Pa. 111.

To the same effect are Stewart's Estate, 147 Pa. 383, Bell's Estate, 147 Pa. 389, Fairfax's Appeal, 103 Pa. 166, Coggins's Appeal, 124 Pa. 10, Cascaden's Est., 153 Pa. 170, and Woelpper's Appeal, 126 Pa. 562.

Christianna Schmidt also left a will, and by which she bequeaths her estate, consisting entirely of personalty, "to my children living at the time of my death;" the meaning of which is certainly not open to construction. These two good old peo-

ple who had lived and passed together more than the time usually allotted to man, who raised this family of children, certainly had some common purpose in view in thus making a similar provision in each of their wills, to take effect at the death of Christianna Schmidt.

*H. M. Houser* and *J. W. Appel*, with them *A. J. Eberly*, for appellees.—The will of J. Adam Schmidt must be interpreted according to the well established canon of construction in will cases, that where there is a devise for life with remainder over to testator's children then living or surviving, the words "then living or surviving" shall be taken to refer to the period of the testator's death: Manderson v. Lukens, 23 Pa. 31; Ross v. Drake, 37 Pa. 373; Cressons's Appeal, 76 Pa. 19; Laguerenne's Est., 12 W. N. C. 110; Foster v. Wetherill, 33 Leg. Int. 42; Breese's Est., 2 Pa. Dist. Rep. 364; Grantz v. Tyrrell, 7 Pa. Superior Ct. 249.

In Seybert v. Hibbert, 5 Superior Ct. 537, SMITH, J., says: "Where well considered and unimpeached adjudications have assigned to certain forms of disposition a determinate result, the courts are bound by it as an ascertained law of construction."

Any other interpretation of this will will produce inequality amongst the heirs, which the law abhors; and will disinherit testator's grandchildren for whom he had the greatest regard and the tenderest concern. The courts have always been free to confess that they will struggle to prevent results like these.

Words seemingly importing contingency will not be allowed to have that effect unless it can by no fair construction be avoided.

There was no intention on the part of the testator to disinherit any of his children or grandchildren.

As the court below well says: "There is nothing in the will, unless it be the words 'then living,' to indicate the intention on the part of the testator to disinherit his grandchildren, and it is evident that these words of themselves are not sufficient. The doubt seems to be rather resolved upon the other side," etc.

Testator's grandchildren seemed to be the special objects of his solicitude. He distinctly states that those of his children who shall have offspring shall receive a share more of his estate than those whose marriage has been childless.

OPINION BY RICE, P. J., February 16, 1900 :

The defendants rest their case mainly on the proposition that where there is a devise for life with remainder over to testator's children " then living " or " then surviving," the words " then living " or " then surviving " shall be taken to refer to the period of the testator's death. If by this is meant that there is an established rule of construction or of law which gives to the words a fixed meaning, a rule which may be invoked to override the actual intent of the testator, or which precludes inquiry into the intent, the proposition is not sound in principle, nor is it sustained, at least not to the full extent contended for, by the authorities. In the construction of wills the great general and controling rule is that the intent of the testator shall prevail, by which " is meant his actual, personal, individual intent, not a mere presumptive conventional intent inferred from the use of a set phrase or a familiar form of words : " Tyson's Estate, 191 Pa. 218. " With the desire to reduce to a minimum the perplexity and uncertainty inseparable from the subject, courts have established certain more or less artificial and arbitrary canons of construction, by which certain forms of expression are presumed to have certain meanings, and in doubtful cases these presumptions are held to be decisive. But all these canons are subservient to the great rule as to the intent, and are made to aid, not to override it. As in all such cases, care is required that tools shall not become fetters, and that the real end shall not be sacrificed to what was intended only as the means of reaching it : " MITCHELL, J., in Woelper's Appeal, 126 Pa. 562. In doubtful cases the courts favor that construction which, consistently with the words of the instrument, will give an absolute rather than a defeasible estate, a vested rather than a contingent one, and which will result in a disposition in conformity to the general rules of inheritance, rather than one which will disinherit an heir-at-law. There are good reasons for so doing, amongst which is the strong probability that they thereby carry out the real intent of the testator. But an examination of the cases will show that they go no further than to establish the general rule that the phrase under consideration and similar phrases will be construed to refer to the death of the testator, unless it clearly appears that he meant it to refer to a different period. When the intention has been apparent,

the courts have not been prevented by any rule of their own making to carry it out, even though the result was to make the remainder contingent. See Woelper's Appeal, supra, McBride v. Smyth, 54 Pa. 245, Buzby's Appeal, 61 Pa. 111, Delbert's Appeal, No. 1, 83 Pa. 462, List v. Rodney, 83 Pa. 483, Cascaden's Estate, 153 Pa. 170, Martin's Estate, 185 Pa. 51, Rudy's Estate, 185 Pa. 359, and Mergenthaler's Appeal, 15 W. N. C. 441. Some of the cases supposed to assert or recognize a more rigid rule are reviewed by Justice MITCHELL in Woelper's Appeal, supra. These are Johnson v. Morton, 10 Pa. 245, Ross v. Drake, 37 Pa. 375, and Barker's Appeal, 2 Cent. Rep. 282. The cases of Minnig v. Batdorff, 5 Pa. 503, and Buckley v. Reed, 15 Pa. 83, although not noticed in the opinion, were cited by counsel and were undoubtedly considered. These cases, therefore, may be passed without further comment. In Manderson v. Lukens, 23 Pa. 31, the devise was to the widow during her life or widowhood, and "whenever her death or marriage should take place " it was to be equally divided between the testator's children, "which may be then alive, or who may have left legitimate heirs." The word "whenever" was properly construed to refer to the period when the property was to be divided, not to the period when the estate was to vest. The difficulty in the case arose out of the subsequent clause, which, read literally, would have been absurd, because, as the court pointed out, it gave the land to the children even though they should be dead. Of course the testator did not mean this. There was, therefore, occasion and necessity for construction; and applying the general principles which may be invoked in doubtful cases the court held, not that there was an inflexible rule of law which governed the case, irrespective of the actual intent of the testator, but that, having regard to his intent, the plain object of the clause was to prevent the estate of the devisees from being defeated by their death during the precedent estate. In Womrath v. McCormick, 51 Pa. 504, the devise was to the widow for life and "at her decease to be divided into as many parts " as the testator should "then have children living, the issue of any deceased child to represent their parents." It was held, following Manderson v. Lukens, that the vesting of the estate in the children of the testator at his death was not prevented by the postponement of the division of the property

until the termination of the life estate carved out; therefore, they and the widow could convey a good title.    The case is more closely analogous to the present than Manderson v. Lukins, but, conceding that the decision has not been qualified or shaken by later decisions, the parallel is not perfect, as will appear hereafter.    Crawford v. Ford, 7 W. N. C. 532, belongs to the same class.    Letchworth's Appeal, 30 Pa. 175, and Lipman's Appeal, are also not parallel with the present case in their facts.    The former enforces the general principle, which is everywhere conceded, that the law inclines to treat the whole interest as vested, and not as contingent, and therefore in case of doubt or mere probability, it declares the interest vested.    It was therefore held that if upon a fair construction of the whole will it appears that the devise was not to such children as should be living at a particular time, but a mere direction for distribution among his natural heirs at a particular time, the heirs living at the testator's death would take a vested interest.    In the latter case, the language of the devise of the residue was ambiguous, and it was held that this " very uncertainty of meaning as derived from the will " was decisive in favor of the appellants.    Chief Justice Lowrie said: " The rule of equality of descent to relatives of the same degree, is so just that the law adopts it when the law is to govern, and prefers it when the law is called upon to interpret."    But is the law called upon to interpret in the present case ?    This preliminary question must be answered in the affirmative before the rule can be invoked.    The " preference," " bias," " leaning," " inclination " (all these expressions are used in the cases), of the court have no place in the decision if the intent of the testator is clear, and he has not attempted to do something unlawful.    The case that is supposed to be so nearly like the present in its facts as to rule it is Cressons's Appeal, 76 Pa. 19.    That it is not so, but that the question arising in the construction of a devise like that under consideration was expressly left undecided, we think can be clearly shown.    In the second item of his will the testator devised a lot to his wife in fee.    In the third item he devised her another lot for her life.    In the fourth item he gave her an annuity " for the comfortable support of herself and the board of our children during their minority."    In the fifth item he gave the residue of his estate " to all my children who shall

then be living," etc. The court admitted that this was not an easy will to interpret, but upon a view of all its provisions concluded that the testator's intention was to vest the remainder in all his children living at his death. But surely the will would not have been difficult of interpretation if the rule of construction were as inflexible as here contended for. The court evidently did not so regard it, for they took pains to show that, as it was placed, the word "then" referred to no distinct time by grammatical construction or manifest intention, and being obscure in reference, all the other considerations arose which gave a preference to a vested estate rather than a contingent one, and avoided the conclusion that a considerable portion of the estate intended for the children's benefit was left without proper disposition during the widow's life. But the court further said: "Had the subject of the fifth item been wholly the same property devised and bequeathed to the widow for life" (as it is in the case at bar), "the subject itself would have indicated her death as the period of vesting in the children." It is clear, therefore, that this is not a binding precedent which rules the present case in the defendant's favor.

Buzby's Appeal, 61 Pa. 111 fairly illustrates the doctrine that the rule of construction will not override the intent but will control where an opposite intent does not clearly appear. Testator devised to trustee for use of his son William for life and from and immediately after his decease, then in trust for the children of the said William that shall "then be living" and issues of such of them as shall "then be deceased," and for want of such child or children or lawful issue, "then in trust for the use of my right heirs forever." It was held that the remainder in fee limited to the children of William living at his decease was contingent or executory, while the limitation over by the words, "then in trust for my right heirs forever" was construed to refer to the date of the death of the testator. "Obviously the word then is not used in this clause as an adverb of time, but as a conjunction, signifying in that case, in that event or contingency. If this be its meaning, there is nothing to prevent the general rule from applying, and the words must be construed as referring to the heirs of the testator at the time of his death." The general rule here referred to is, that a limitation in remainder to heirs will be construed to mean those who

were such at the testator's death, with the important qualifica-tion expressed in this case and recognized or expressed in all the well-considered cases, " unless a different intent clearly ap-pears."

Keeping these general principles in mind, what is the proper construction of this will? The clause that has given rise to the difficulty reads as follows : " First, I give, devise and be-queath to my beloved wife, Christianna Schmidt, all my estate, real, personal and mixed, for and during her natural life, or so long as she remains my widow unmarried, and after her death or remarriage I give, devise and bequeath the same unto all my children, then living, under the following conditions." The word " then " was used as an adverb of time, and not as a conjunc-tion signifying, merely in that case, in that event or contingency. This is as obvious as that it was used in the latter sense in the limitation over to the heirs of the testator construed in Buzby's Appeal, supra. It is equally as obvious that it refers to the period of the widow's death or remarriage. That was the period or the event of which the testator was speaking, and he had spoken of no other. There is no other event to which it can refer unless we add words to the will. Nor was this a mere postponement of the time of enjoyment. " It was a selection of individuals from a class to be donees of a right ; a descrip-tion of persons not a regulation of the interest given : " Mc-Bride v. Smyth, 54 Pa. 245. In such cases the rule applies that where the devise or bequest is to such person or persons as shall live to a certain age, or be living at a certain time, with-out any distinct gift to the whole class, preceding such restrict-ive description, so that the uncertain event forms part of the description of the person or persons who are to take the devise or bequest is necessarily contingent: Smith on Executory In-terests, 281 ; Fairfax's Appeal, 103 Pa. 166 ; Craige's Appeal, 126 Pa. 223 ; Coggins's Appeal, 124 Pa. 10, 34 ; Martin's Es-tate, 185 Pa. 51 ; Mergenthaler's Appeal, 15 W. N. C. 441. The arguments against this construction are so completely answered in the opinion delivered by Justice STRONG in McBride v. Smyth, supra, that we feel justified in quoting therefrom at length. He says : "It is argued by the appellee that this con-struction excludes the widow and issue of any child who may have died before the designated period of vesting arrived, and

that the testator ought not to be supposed to have intended such exclusion. We are, however, in searching for his intent, confined to what he said. It is not ours to make a will for him, however improvident or inequitable we may think the dispositions he made. A court may indeed strike out unmeaning and repugnant words and phrases, when the real meaning of a testator admits of no doubt. But to strike out, as it is suggested we may in this case, from the description of devisees the words 'such of' and 'as may be living' and make it read 'my children' is more than striking out redundant, unmeaning and repugnant words. It is substituting devisees for those designated, and that, when there is nothing to show that the intention requires it. The words are not redundant, nor are they unmeaning or repugnant to any plain wish of the testator. . . . Equally unwarranted should we be in inserting after the description of devisees ('such of my children as may be living when the youngest of them living shall attain the age of twenty-one years ') the words 'and the issue of such as shall then be dead.' To do so involves the assumption that such was the testator's intent; an assumption which rests upon nothing in the will itself, but solely upon conjecture."

The conclusion that we have foreshadowed is strengthened, if it is affected at all, by an examination of the context. The provision concerning the share of the testator's daughter Kate, tends to show (we do not say it is conclusive) that the period referred to in the clause for construction was the termination of the precedent estate. Nor is the conclusion weakened by the provision inserted out of abundant caution, or because of some erroneous notion of the law, shutting out the childless widows of deceased sons.

Returning to the clause of the will above quoted, and upon the construction of which the case turns, we find no obscurity in the disposition of the testator's estate. It contains no redundant nor repugnant words. It was evidently drawn by one who knew their meaning and their effect in the connection in which they were used. Why then should we strike out any of them or refuse to ascribe to them the meaning and effect the testator presumably intended them to have? The words of a will ought to be construed according to their natural and ordinary meaning unless they are qualified by the context or there

be a settled rule of law affixing a different meaning to them. We have endeavored to show that no such consideration exists in the present case for not giving the words of the testator their natural and ordinary meaning, which is that the persons who were to take upon the determination of the precedent estate, were the children of the testator " then living." He might have used more, or chosen other, words to express the same idea, but he could have expressed it in plainer or more unmistakable English. " All mere technical rules of construction must give way to the plainly expressed intention of a testator, if that intention is lawful. It is a rule of common sense as well as law not to attempt to construe that which needs no construction:" Reck's Appeal, 78 Pa. 432.

We conclude that the plaintiffs are the owners of the real estate in question, and are able to make a good title; therefore they were entitled to judgment.

The judgment is reversed, and the record is remitted to the court below with directions to enter judgment for the plaintiffs for the sum of $1,415 with interest and costs.

BEAVER, J., dissents.