## Stevenson's Estate

*Morris Klewans*, for plaintiffs.
*Gilson & Haag*, for defendants.

HIPPLE, P. J., February 16, 1943.—This proceeding, in the nature of a case stated in which the facts are agreed to by the various parties in interest, involves the construction of the residuary clause of the last will and testament of Margaret Campbell Stevenson, who died January 8, 1942. . . . This will is in the handwriting of the testatrix, was written by her, and not by an attorney at law. In addition to specific devises of real estate and bequests of personal property, the residuary estate was disposed of in the following manner:

"The balance of my real-estate—consisting of the store property on Erie Avenue between Sixth and Seventh Street and the double dwelling house at Farwell and balance of my personal property—after just

debts have been paid shall be equally divided between—·Percy Stevenson Campbell, Luther Roy Campbell, Marian Campbell Ritter, Margaret Campbell Perry, or their heirs."

. Margaret Campbell Perry, one of the residuary legatees and devisees, died intestate on October 23, 1939, prior to the death of testatrix, leaving to survive her her husband, Dr. Frank L. Perry, and an adopted daughter, Margaret Louise Perry, who was born July 15, 1930, and was formally adopted by Margaret Campbell Perry on July 9, 1931. Mrs. Perry was a full sister of Luther Roy Campbell, and a half sister of Percy Stevenson Campbell and Marian Campbell Ritter, all of whom are children of the same father, who was a brother of testatrix, and were therefore nephews and nieces of testatrix.

Dr. Frank L. Perry and Margaret Louise Perry, the adopted daughter, claim an undivided one-fourth interest in the residue of this estate as heirs and devisees in substitution for Margaret Campbell Perry, deceased. The three living legatees and devisees deny that either Dr. Perry or Margaret Louise Perry has any interest in the residuary estate, and assert that the residuary estate should be awarded to them as surviving legatees and devisees in equal shares.

The residuary estate consists of both real estate and personal property and such property is blended in the residuary clause of the will, that is, there is no distinction made between the real estate and the personal property, and it was plainly the intention of testatrix that the residuary legatees share equally in both the personal and real estate.

The questions involved are substantially as follows:

1. Do the words "or their heirs" in the residuary clause constitute a substitutionary gift to the heirs of Margaret Campbell Perry, or should the word "or" be construed to mean "and" so that the expression would read "and their heirs", instead of "or their heirs"?

2. If the words "or their heirs" constitute a substitutionary gift to the heirs of Margaret Campbell Perry, is Dr. Frank L. Perry, her surviving husband, one of her heirs, who would acquire an interest in the real estate of testatrix?

3. If the words "or their heirs" constitute a substitutionary gift to the heirs of Margaret Campbell Perry, is Margaret Louise Perry, the adopted daughter, one of her heirs and entitled to inherit as such?

4. If Dr. Frank L. Perry, the surviving spouse, is not an heir of Margaret Campbell Perry, so as to entitle him to be vested with real estate, is he such heir as to the personal property of testatrix by reason of the blending by testatrix in the residuary clause of her will?

5. If either or both Dr. Frank L. Perry and Margaret Louise Perry are heirs of Margaret Campbell Perry, to what extent will they, together with the remaining legatees and devisees, participate in the distribution of the portion of the residuary estate devised to Margaret Campbell Perry?

Before discussing the questions in the order above stated it may be noted that the will of testatrix is dated May 10, 1933, almost three years after the birth of Margaret Louise Perry, and almost two years after her adoption by Margaret Campbell Perry, so that when testatrix executed her will Margaret Campbell Perry was not only married to Dr. Frank L. Perry but had adopted, according to law, the child, Margaret Louise Perry. It can be assumed that when testatrix executed her will she knew that Margaret Campbell Perry had in due form adopted the child known as Margaret Louise Perry. It is also a fact that this will was executed after the passage of the Intestate Act of June 7, 1917, P. L. 429, and the Wills Act of June 7, 1917, P. L. 403, and the plain intent expressed by testatrix in the residuary clause was that the residue of her estate, both real and personal, should be equally divided

between her nephews and nieces, who were the primary objects of her bounty, or their heirs.

In construing a will the intention of the testatrix as evidenced by the "four corners" of the will must be first determined, and if it is possible the will must be construed so as to give effect to the intention of the testatrix. Bearing in mind that principle we discuss the various questions involved:

1. Do the words "or their heirs" in the residuary clause constitute a substitutionary gift to the heirs of Margaret Campbell Perry, or should the word "or" be construed to mean "and". The will is a so-called "homemade" will. It is evident that testatrix knew how to make specific bequests and devises and vest in her legatees and devisees absolute interests. In the first paragraph she uses the expression "do hereby bequeath and devise the following . . ."; "I give and bequeath" to her nephew certain real estate and the sum of $5,000. In the second paragraph she likewise uses the expression "I give and bequeath" to certain individuals and to the First Presbyterian Church of Renovo specific sums of money, and in that paragraph she states: "I give and bequeath to the Lees Sisters of Renovo, Agnes, Barbara, Helen Lees the sum of Five hundred dollars 500.00 to be equally divided between them." There is no alternative or substitutionary gift, or even one of survivorship made between the Lees sisters, nor is there any substitutionary gift either in the devise and bequest to Percy Stevenson Campbell in the first paragraph, or to Ada L. Campbell in the second paragraph. Therefore considerable significance must be attached to the words "or their heirs" in the residuary clause. No provision is made either in the bequest to the Lees sisters, or in the residuary clause, that in the event one of the named legatees or devisees should die prior to the death of testatrix the share of the one so dying should vest in the survivors, and no survivorship gift was provided in any event. There is

therefore a clear distinction made by testatrix between the specific legacies and devises and her disposition of the residuary estate. By the use of the words "or their heirs", it is apparent, testatrix intended that in the event any one of her residuary legatees or devisees should die prior to her death the heirs of such deceased residuary legatee or devisee should receive the share intended to vest in such deceased residuary legatee or devisee.

This will must be interpreted as written, and while it has been held in a number of cases that " 'Courts of justice will transpose the clauses of a will, and construe "or" to be "and," and "and" to be "or," only in such cases when it is absolutely necessary so to do, to support the evident meaning of the testator . . . they [courts] cannot arbitrarily expunge, or alter words, without such apparent necessity' ": Whitman's Estate, 329 Pa. 377, 381.

If it were evident that testatrix intended to provide for a gift of survivorship between the four residuary legatees and devisees we would hold that the use of the word "or" was intended by testatrix to mean "and". However, an examination of the entire will shows that testatrix knew how to provide for an absolute gift and there is nothing in the will to indicate that she meant other than that if the residuary legatees and devisees were living at the time of her death the four named should share equally in the residuary estate, but if one should predecease her the heirs of the one so dying should be substituted in the place of the deceased legatee and devisee. If she had intended otherwise she would undoubtedly have rewritten her will after the death of Mrs. Perry over two years prior to the death of testatrix. Therefore, we conclude that the words "or their heirs" in the residuary clause constitute a substitutionary gift to the heirs of Margaret Campbell Perry and inasmuch as Mrs. Perry died prior to the

death of testatrix the heirs of Mrs. Perry are substituted in her stead.

2. The second proposition raises the question whether the husband of Mrs. Perry, who survived her, is an heir of his deceased wife and therefore is vested with an interest in the real estate of testatrix included in the residuary clause of her will. This calls for an examination of the rights acquired by a surviving husband or wife in the estate of the other. Insofar as the residuary estate consists of personalty the decisions in this State are practically unanimous in holding that, where personalty is the subject of the gift, the word "heirs" is to be construed as those who would take under the intestate laws, and therefore the whole problem is whether Dr. Perry, the surviving husband of Mrs. Perry, is to be regarded as her heir insofar as real estate is concerned. As to personal property the rule is laid down in Golden's Estate, 320 Pa. 4, in which case the surviving spouse and children of deceased children were held to be within the meaning of the word "heirs" and were included in the distribution of the personal estate there involved. There are many other decisions holding likewise.

Originally an heir was held to be one on whom the law cast an estate of inheritance immediately on the death of the owner, and in a strict and technical sense the term was not applicable to the succession in personal estate. Heirs were those persons *appointed by law* to succeed to the real estate in the case of intestacy. In 9 R. C. L. 23, the general rule is well stated, as follows:

"But in modern acceptation the word [heirs] is frequently used to indicate those who come in any manner to the ownership of any property by reason of the death of an owner, and may, therefore, include next of kin and legatees, as well as those who take by descent. By the civil law the term applies to all persons who are called to the succession, and since the enactment

of statutes of distribution, it has often been used in gifts and bequests of personal property to designate the donees or legatees. Similarly, though the word 'inheriting' can only apply to lands under the common law definition, this does not apply where, by statute, it is enacted that the personal estate of those who die intestate shall be distributed in the same manner in which real estate descends."

In the early case of Johnson v. Haines' Lessee, 4 Dallas 64, 65, decided in 1799, which involved the title to real estate in Germantown, Chief Justice M'Kean cited the sixth section of the charter granted to William Penn in which the laws of England "for regulating and governing of property, as well for the descent and enjoyment of lands, as for the enjoyment and succession of goods and chattels" were introduced and established in Pennsylvania, to continue until they were altered by the legislature of the province. He held that "The common law, being therefore, the original guide, and the plaintiff in error being the heir at common law, his title must prevail, *unless it shall appear, that an alteration in the rule has been made, by some act of the general assembly*". (Italics supplied.)

In that case reference was made to the Act of April 19, 1794, 3 Sm. L. 143, and the Act of April 4, 1797, 3 Sm. L. 296, and it was held the title to the real estate in question under the facts in that case was vested in the heir at common law to the exclusion of collateral relatives. It is interesting to observe that the early decisions did not hold a surviving husband or wife to be the heir of the other as to personalty until after the passage of the Act of April 8, 1833, P. L. 315. That act remained in effect insofar as it affected surviving husbands and wives, except as amended by the Act of April 1, 1909, P. L. 87, until the passage of the Intestate Act of June 7, 1917, P. L. 429. Under the Act of 1833, as amended by the Act of April 11, 1848, P. L. 536, sec. 9, if a married woman died intestate, leaving

a husband but no children nor the descendants of a deceased child, the husband was entitled to the personal estate of his deceased wife absolutely, and if such married woman left to survive her a child, or children, her personal estate was divided between the husband and the child, or children, in equal shares, but the real estate by section 10 was distributed as provided by the intestate laws then in effect, her surviving husband, however, being entitled to his rights therein as tenant by curtesy. If the intestate was a male, leaving a widow, the widow was entitled to one third of the real estate for the term of her life, and one third of the personal estate absolutely. By this act the husband and wife upon the death of the other each became vested with a specific interest in the personal estate of the intestate, but no absolute interest was given to either in the real estate. The widow was entitled only to the use of or income from one third of the real estate for the term of her life, popularly known as dower rights, and the surviving husband received only a life estate in the real estate, known as a tenancy by the curtesy.

The Act of April 1, 1909, P. L. 87, amended the Act of April 8, 1833, by providing that where a husband died leaving a widow and collateral heirs but no issue the widow was entitled to real or personal estate to the value of $5,000; that if the person dying was the wife her real estate should descend and pass as then provided by law, that is, to her heirs, either direct or collateral, saving to the husband his right as tenant by the curtesy; that the husband should receive the personal estate absolutely if there were no children or descendants of deceased children; and that if any children survived the deceased wife the personal estate should be divided between the husband and children alike.

By no act of the General Assembly subsequent to the Act of 1833 was any alteration made in the succession

to the real estate of an intestate other than the provision in the Act of April 1, 1909, that, if an intestate left a widow and collateral heirs but no issue, the widow if she so desired would be entitled to real estate to the aggregate value of $5,000, and in addition to one half of the remaining real estate for the term of her natural life, and one half of the remaining personal estate absolutely. No one of the several intestate laws, prior to the passage of the Intestate Act of 1917, vested in a surviving husband or wife an absolute interest in the real estate, although they did vest an absolute interest in the personal property of a deceased spouse.

Neither husband nor wife in any proper sense of the word was recognized as an heir to the other insofar as real estate was concerned. Their respective interests in the real estate of a deceased spouse were utterly unlike that of an heir. It is true a surviving spouse acquired an interest or an estate in real estate but it was of a special and peculiar nature, different from the estate of inheritance which the law cast upon an heir. However, as to personal property there is an unbroken line of decisions to the effect that a surviving husband or wife is the heir to the other within the meaning of that term unless there was something in the will under construction to the contrary.

Thus in Gibbons v. Fairlamb, 26 Pa. 217, 218, decided in 1856, the testator bequeathed a sum of money to his daughter to be paid out of his personal estate within six months after his death, with the provision that if any of the legatees died prior to the expiration of six months after his death, and before payment of the legacies, the bequest to such legatee "shall descend to and be equally divided amongst his or her heirs or representatives." A daughter died during the lifetime of the testator and her husband made claim to the legacy as the heir or legal representative of his deceased wife. The Supreme Court held, with respect to the legacy, the husband was the "heir or representa-

tive" of his deceased wife within the meaning of the will, and that "The word 'heirs' does not necessarily exclude the husband, because that word has been held to mean such persons as would be entitled to the money, or the representatives by the law of the country", citing Patterson, Exec., v. Hawthorn, Admr., 12 S. & R. 112, and Buckley's Administrators v. Reed, 15 Pa. 83.

In Eby's Appeal, 84 Pa. 241, decided in 1877, the testator directed the conversion of his real estate into cash to be divided between one daughter and the heirs of two other daughters in equal shares. One daughter married subsequent to the death of the testator and died leaving her husband but no children. The Supreme Court there held (p. 245) that the matter must be governed by the ordinary rules applicable to the distribution of personal property:

"Such being the case, unless a contrary intent is indicated by the will, we must construe the word 'heirs,' as found in that will, as equivalent to 'representatives' or 'distributees.' In such case, the husband must be taken to be an 'heir' of his wife as to her personal estate; and not only do our distribution acts so in effect provide, but this idea is sustained by many decisions, commencing with Patterson v. Hawthorn, 12 S. & R. 113, and ending with McGill's Appeal, 11 P. F. Smith 46." The Supreme Court there affirmed its decision in the case of Gibbons v. Fairlamb, supra.

In Gilmor's Estate, 154 Pa. 523, 534, decided in 1893, it was held that in a bequest of personalty, unless a contrary intent is indicated by the will, the word "heirs" signifies heirs as ascertained by the statute of distribution, citing Ashton's Estate, 134 Pa. 395. The Supreme Court stated " 'When used in a gift of personalty it [heirs] is very frequently employed to denote those who are entitled to take under the statute of distribution unless there is something to indicate a contrary intention.' " To the same effect is

Wunder's Estate, 270 Pa. 281, decided in 1921, where it was held that the word "heirs" used in a bequest of personalty means heirs as ascertained by the statute of distribution, unless a contrary intent is indicated by the will.

In 1931, in Simpson's Estate, 304 Pa. 396, the Supreme Court again held that in a bequest of personalty the widow will be considered an heir of her husband, and that where this word is used in a bequest of personalty it means heirs as ascertained by the statutes of distribution, unless a contrary intent is indicated in the will, citing Wunder's Estate, Gilmor's Estate, and Eby's Appeal, supra.

Therefore, the settled law in Pennsylvania with regard to personal property was that the surviving husband or wife was an heir to the other unless there were a contrary intent indicated by the will under construction, and that in determining who were heirs of a deceased person with relation to personalty the statutes of distribution, commonly known as the Intestate Act, then in effect must control.

However, as to real estate the rule was different under the Intestate Act of 1833. In Dodge's Appeal, 106 Pa. 216, 220, it is clearly held that the word "heirs" does not include a surviving widow. In that will, which created a trust and provided that after the decease of certain persons the real estate should vest "absolutely in their [life tenants'] heirs forever", the word "heirs" was used in its technical or legal sense, meaning those upon whom the law cast the estate in real property. However, the Supreme Court did say that "If the fund for distribution were personalty the widow would perhaps be entitled to participate therein . . ."

With respect to real estate the Intestate Act of June 7, 1917, P. L. 429, made a radical change in the rights of husband and wife in the real estate of the deceased spouse. It places the husband and wife on the same basis and eliminates all distinctions between real and

personal property. It vests in the surviving spouse an absolute interest not only in the personal estate but also in the real estate; it provides that if the intestate leaves a spouse surviving and one child, or a spouse and no children, but descendants of a deceased child, the surviving spouse is entitled to one half of the real and personal estate, and if there is a spouse surviving and more than one child, or one child and the descendants of a deceased child, or the descendants of more than one deceased child, the surviving spouse is entitled to a one-third part of the real and personal estate. It gives to the surviving husband the same rights which were given to the surviving widow by the Act of April 1, 1909, P. L. 87, and since the effective date of the Act of 1917 it must be held that a surviving husband is to be regarded as an heir of his wife as to the real estate, as prior to the Act of 1917 he was held to be an heir of his wife as to her personal estate.

If an absolute interest in the personal estate of a deceased husband or wife, under the Intestate Act of 1833, was sufficient to hold the surviving husband or wife as an heir of the other with regard to personalty, because each was vested with an absolute interest therein, why should not the same rule apply since the Intestate Act of 1917, which vests an absolute interest in real estate in the surviving spouse? To determine whether a surviving husband since the Act of 1917 is an heir to his deceased wife, we must turn to that statute of distribution: Bowen's Estate, 139 Pa. Superior Ct. 523, citing Simpson's Estate, Wunder's Estate, supra, and Comly's Estate, 136 Pa. 153.

Counsel have not found, nor has our independent investigation discovered, any case in which this precise question has been ruled upon by either of our appellate courts. It has, however, been construed in Heizmann's Estate, 18 Berks 250, 254, in which President Judge Schaeffer held that, prior to the Intestate Act of 1917, the words "heirs at law" when used to describe donees

of real estate did not include a husband or wife as heir to the other, but that the Intestate Act of 1917 has settled the status of husband or wife as the heir to the other, and there is no longer any question but that they are regarded as heirs at law.

"Prior to this Act of Assembly they were not recognized as such, and could not be the heir of each other, because the interests they took were not an estate of inheritance or fee, and were unlike that of the heir. Chief Justice Tilghman has defined 'heirs' as the persons who are the representatives of a decedent by the law of the country: Patterson v. Hawthorne, 12 S. & R. 112. By virtue of this definition, it may fairly be said that a widow is an heir of her husband under the Intestate Act of 1917, which gives the surviving spouse an absolute interest in the real and personal estate of the decedent. This statute gives the husband and wife a well-defined interest in the estate of each other, an interest which is absolute and larger than is even given to the other heirs in certain circumstances, and it seems to us that they must now be regarded as heirs, and must come within the general sense of that word.

"As stated, a legal heir is one upon whom the law casts the succession, and under the Intestate Act of 1917 the surviving spouse—husband or wife—takes an estate of inheritance and is one to whom the estate descends by virtue of said Act. The argument is made that the Act of 1917 shows throughout that no change is to be made in the meaning of the word 'heirs' when used to designate the donees of real estate, because a distinction is made in numerous sections between a surviving spouse and an heir, and that the Act speaks of surviving spouse and the heirs or next of kin. It will be noticed that in section 2($a$) of said Act, the words 'surviving spouse and other kindred' are employed, showing an intention to place spouse in the category of kindred, and thus put him or her on the

same plane with the relatives by blood. 'The heirs of a decedent are those of his kindred upon whom the law, immediately upon his decease, casts the estate in real property, and the estate so descending to the heirs is called the inheritance:' Dodge's Appeal, supra, 220.

"The fact that the words 'surviving spouse' and 'heirs' appear separately in different parts of the Act, and in contradistinction, does not necessarily mean that the spouse is not regarded as an heir. Indeed, the Act plainly shows a deep solicitude for the husband or wife in the preference and size of interest that is given him or her in the estate of the decedent, and it is because of the relationship and the quantum of interest that is given to them, that they are specifically named. They now take absolute estates as surviving spouse under the Act, and are, therefore, legal heirs as truly as the other beneficiaries to whom the law passes the estate of the decedent."

We concur with the reasoning of Judge Schaeffer in this case, as well as in the cases discussed by him of Fosnocht's Estate, 16 Berks 171, Heck's Estate, 15 Berks 25, and Leithiser's Estate, 15 Berks 235.

It is true that in Heizmann's Estate the will under construction provided that, if the devisee died before the testator, the interest of the devisee in the real estate in question should pass to the heirs at law of the deceased devisee according to the laws of intestacy of the State of Pennsylvania.

However we cannot agree with Judge Schaeffer in his suggestion in that case (p. 253) that "If the testator had merely provided that upon the death of Theodore Heizmann the devise intended for him should go to his heirs-at-law, without anything more in the will to indicate his intention, the words would have to be given their strict technical meaning." Under the Intestate Act of 1917 a surviving spouse is an heir of the deceased spouse as to both real and personal estate as is well reasoned in the portion of

Judge Schaeffer's opinion above quoted. The inclusion in the will of the expression "according to the Laws of Intestacy of the State of Pennsylvania" does not have any effect upon the estate which actually vests in the surviving spouse under the provisions of the Intestate Act of 1917. Whether that expression is in a will or not, a surviving spouse is now an heir of the deceased spouse whether the estate consists of personal or real estate, or both. To hold otherwise would be in direct conflict with the many decisions of the appellate courts which hold a surviving spouse to be an heir of the deceased spouse as to personalty upon the theory that under the prior intestate acts a surviving spouse was vested with an absolute interest. Such surviving spouse being now vested with an absolute interest in real estate under the Intestate Act of 1917, there has been "an alteration of the rule" (Johnson v. Haines' Lessee, supra) relating to heirs made by the Intestate Act of 1917, which now prevails whether it is referred to specifically in a will or not. Under circumstances such as are present in this case, involving the construction of the word "heirs", we conclude that Dr. Frank L. Perry, the surviving husband of Margaret Campbell Perry, a residuary legatee and devisee, is one of her heirs and as such has acquired an interest in the real estate of testatrix.

3. Is Margaret Louise Perry, the adopted daughter of Margaret Campbell Perry, deceased, one of her heirs and entitled to inherit as such? This question has been conclusively established in favor of the adopted daughter, Margaret Louise Perry, in the case of Cave's Estate, 326 Pa. 358. There Mr. Justice Stern discussed Russell's Estate, 284 Pa. 164, Cryan's Estate, 301 Pa. 386, and Reamer's Estate, 315 Pa. 148, and held that under the Intestate Act of 1917, sec. 16(a), an adopted child and the adopting parent or parents inherit and take by devolution from and through each other personal estate as next of kin, and

*real estate as heirs,* as fully as if the person adopted had been born a lawful child of the adopting parents, and that under section 16 (*b*) the person adopted shall, for all purposes of inheritance and taking by devolution, be a member of the family of the adopting parent or parents. The court, through Mr. Justice Stern, then held (p. 365) :

"The word 'from' contemplates the death of either the adopted child or the adoptive parent, the statute giving the survivor the right to inherit from the deceased. But the word 'through' extends the inheritance rights of both the adopted child and the adoptive parent to those arising by virtue of representation of each other for purposes of devolution, thereby qualifying them to inherit, not merely from one another, but from one another's relatives and kindred through the channel left open by the death of either. The word 'through' presupposes the death of the adopted child or the adoptive parent, leaving the other surviving, and entitling him to inherit from a third person in the right of the one thus deceased. When a child inherits from a parent property of which the latter is seised, he takes 'from,' but not 'through,' such parent. When, on the other hand, he inherits property from a third person by right of representation of his parent who would have inherited the property were he living, he takes 'through,' not 'from,' his parent. By the use of both words—'from' and 'through'—it is clear the legislature intended that the adopted child should have the right to inherit not only property in which his adoptive parent himself owned a vested interest, but property of kindred of his adoptive parent which the latter would have inherited had he been living, and which, by reason of his death, passes 'through' him to his adopted child as it would have done, to use the language of section 16 (*a*), 'if the person adopted had been born a lawful child of the adopting parent or parents.'

"The language of clause (a) of section 16 is greatly strengthened and emphasized by that of clause (b). Nothing could be more sweeping than the provisions: 'The person adopted shall, for all purposes of inheritance and taking by devolution, be *a member of the family of the adopting parent or parents.* . . . Adopted persons shall not be entitled to inherit or take from or through their *natural* parents, grandparents, or collateral relatives, . . .' This severs the child from his natural family tree and engrafts him upon that of his new parentage 'for *all* purposes of inheritance.' ".

Turning to the statute of distribution, the Intestate Act of 1917, to determine who are "heirs", we conclude that Margaret Louise Perry is an heir of Margaret Campbell Perry, her adoptive mother, and is entitled to inherit as such. It is true as contended by the surviving residuary legatees and devisees that the Intestate Act of 1917 pertains to estates of those dying intestate, and has no application to cases involving a will. However, the will here involved is not that of Mrs. Perry, but that of her aunt, and having determined that the words "or their heirs" in the residuary clause of the will in question constitute a substitutionary gift to the heirs of Margaret Campbell Perry we must look to the Intestate Act of 1917 to ascertain those who are entitled to take under that statute as the heirs of Margaret Campbell Perry, deceased. Therefore, the adopted child is an heir of her adoptive mother and, as such, is entitled to share in the interest of Margaret Campbell Perry in the residuary estate of testatrix.

4. Having held that Dr. Frank L. Perry, surviving spouse, is an heir of his deceased wife so as to entitle him to be vested with real estate, he, therefore, is entitled to share in the residuary estate of testatrix. This is a logical conclusion from the finding that Dr. Perry is an heir to the real estate, and it is not necessary to discuss the question whether he would be entitled to share in the personal estate by reason of the

blending of the real and personal estate in the residuary clause of the will of testatrix. Being an heir to the real estate he is also an heir to the personal estate, and is entitled to share in both.

5. Having concluded that both Dr. Frank L. Perry and Margaret Louise Perry are heirs of Margaret Campbell Perry, the question to what extent they will take with the remaining legatees and devisees participating in the distribution of the portion of the residuary estate devised to Margaret Campbell Perry is determined by the provisions of the Intestate Act of 1917. The surviving legatees and devisees have no right to participate in the portion of the residuary estate devised to Margaret Campbell Perry. The Intestate Act provides, in section 1(a), that "Where such intestate shall leave a spouse surviving and one child only . . . the spouse shall be entitled to one-half part of the real and personal estate", and section 7(a) of the act provides that the real and personal estate not given to the surviving spouse shall descend to and be distributed among her children. The situation therefore is that there are a surviving spouse and one child of Margaret Campbell Perry. They are each entitled to one half of the estate of Margaret Campbell Perry, and the residuary estate of testatrix should therefore be divided in the following manner: One fourth to Percy Stevenson Campbell; one fourth to Luther Roy Campbell; one fourth to Marian Campbell Ritter; one eighth to Dr. Frank L. Perry; and one eighth to Margaret Louise Perry.

We, therefore, make the following

## Findings

1. The words "or their heirs", appearing in the residuary clause of the will of testatrix, constitute a substitutionary gift to the heirs of Margaret Campbell Perry.

2. The heirs of Margaret Campbell Perry are Dr. Frank L. Perry, her surviving husband, and Margaret Louise Perry, her adopted daughter.

3. The heirs of Margaret Campbell Perry, viz, Dr. Frank L. Perry and Margaret Louise Perry, are entitled to share in the real and personal property of testatrix included in the residuary clause of her will.

4. The residuary estate should be divided into four portions, one each of which vests in Percy Stevenson Campbell, Luther Roy Campbell and Marian Campbell Ritter, and one of which vests in Dr. Frank L. Perry and Margaret Louise Perry in equal shares, that is, one fourth of said residuary estate vests in each surviving legatee and devisee named as defendants herein, and one eighth vests in each of the heirs of Margaret Campbell Perry, named as plaintiffs herein.